## MARCANTE, ET AL. v. HEIN

(No. 1998; April 19, 1937; 67 Pac. (2d) 196)

For the plaintiffs in error there was a brief and oral argument by *W. A. Muir* of Rock Springs.

For the defendant in error, there was a brief and oral argument by *Louis Kabell, Jr.* of Evanston, Wyoming.

RINER, Justice.

This proceeding in error was instituted to review the record and judgment of the district court of Lincoln County in a case wherein Henry Hein, doing business under the firm name of Table Supply, was plaintiff and Angelo Molinar and Ernest Molinar were defendants. The action was one in replevin and for damages.

Summarized the facts out of which the litigation arose are these: Hein on the 23rd day of September, 1932, was engaged in the retail grocery and meat business in the town of Kemmerer, Wyoming, and Angelo Molinar and Ernest Molinar were conducting a wholesale grocery business under the name of "A. Molinar Wholesale Company," in the same town. On that date, being indebted to Angelo Molinar in the sum of $1174.40 on account of merchandise supplied to him by the wholesale dealers aforesaid, Hein gave to Angelo Molinar a chattel mortgage on all his "stock of groceries, meats, merchandise, goods and wares" used and kept in his business aforesaid. Permission to sell portions of these goods, replacing them with other property of like character, was accorded the mortgagor under the terms of the mortgage, and that instrument, among other things, provided that if the mortgagee, his heirs or executors should deem the security unsafe or insufficient, it should be lawful for them "to declare the principal sum hereby secured, with interest thereon, or any part of such principal or interest then unpaid,

at once due and payable, anything herein or in said note to the contrary notwithstanding, and to enter into and upon any place and take immediate and full possession of the whole of said property, goods and chattels to his or their own use, and sell the same according to law, for the best price that can be obtained, and out of the money arising therefrom to pay said sums of money and all interest due thereon, and expenses of keeping and caring for said property from the time of taking possession during such reasonable time as may be necessary to advertise and sell the same, and the charges and expenses of such sale, rendering and paying the surplus, if any, to the said vendor, his heirs, executors or assigns." This mortgage was duly filed for record in the County Clerk's office of Lincoln County, Wyoming. The instrument was given as security for the payment by Hein to Angelo Molinar, his heirs or assigns of the sum of money above mentioned, as evidenced by a promissory note for that amount, due in six months after September 23, 1932, with interest at six per cent per annum until paid. There had been paid by the mortgagor on this obligation prior to January 28, 1933, the sum of $140.00.

Theretofore, and on December 4, 1929, Hein had mortgaged the fixtures, furniture and equipment belonging to him and used in his store to the First National Bank of Kemmerer, to secure the payment of a loan from that institution, evidenced by a promissory note for $2800.00. The amount of this indebtedness appears to have been gradually reduced, for in 1932, and it would seem prior thereto, the mortgagor allowed the cashier of the bank aforesaid, who bought his groceries at Hein's store, to apply the amounts due on that account on the note owed by Hein to the bank. During the latter part of the year 1932 and the following month of January and during the period the chattel mortgage to Angelo Molinar was in force, payments in

this manner had been made, on December 20, 1932, $56.47 and on January 12, 1933, $46.80, which were applied on this indebtedness to the bank. Its cashier testified that he had paid on this obligation in this manner the sum of $1008.00. On January 28, 1933, the plaintiff, as a witness in his own behalf, stated that he owed the bank the sum of $1338.00. Obligations held by others against Hein seem to have been paid in similar fashion.

It appears also that Hein failed to pay the taxes due the county for the year 1932 on this stock of merchandise; that he owed on January 28, 1933, five or six months' rent on his store premises; that he also was in arrears in his payments for water, heat and light, used in connection with his place of business, to the extent of about $1200.00 and that this bill had been increasing in amount.

On January 28, 1933, Ernest Molinar, as agent for Angelo Molinar, in the presence of the sheriff of Lincoln County in Hein's place of business demanded that Hein pay the amount due on the chattel mortgage above described. After some fruitless efforts during the course of the day on the part of the debtor to raise the money, Molinar asked for and received the keys to the establishment from Hein and his employees, and the store building was closed. The plaintiff testified that he did not turn the keys over to Molinar voluntarily. The sheriff of Lincoln County took no part in these proceedings whatsoever, served no papers, made no demands, and after remaining about a half or three-quarters of an hour departed saying, "I have no business here." Shortly after the store was closed the perishable goods in the store were sold by Ernest Molinar to the extent of some $80.00 or $90.00. This amount does not seem to have been endorsed as a credit upon the promissory note aforesaid.

On January 31, 1933, Hein filed his petition against

Angelo and Ernest Molinar in the district court of Lincoln County, for the recovery of possession of the property thus taken over by them, or for its value, together with damages in certain alleged sums claimed to have been suffered by him in consequence of their action in the premises, including exemplary damages in the sum of $2500.00. A writ of replevin was issued. The sheriff of the county took possession of the property in question, and it was officially appraised, the stock of merchandise at $1177.35 and the fixtures and equipment, not covered by the mortgage to Angelo Molinar but by the mortgage to the bank as already related, at $1750.00.

Thereafter, pursuant to advertisement, the stock of merchandise covered by the chattel mortgage to Angelo Molinar as aforesaid was sold at foreclosure sale on April 22, 1933, at the instance of the mortgagee and the sum of $981.77 was at that time realized therefrom. This amount was endorsed on the promissory note evidencing the indebtedness, which, with costs and attorney's fee, amounted at that time to the sum of $1273.30. A balance still unpaid was thus left of $291.53. This balance is shown by endorsement on the note aforesaid. If the amount obtained from the sale of the perishable merchandise, as above related, was not properly credited, that, of course, should have been done. No effort was made subsequent to January 28, 1933, by Hein to pay the mortgage indebtedness or to redeem the property from the foreclosure sale.

Sometime in the month of June following the First National Bank of Kemmerer appears to have taken possession of the property mortgaged to it, and sold it, obtaining about $1000.00 as proceeds of the sale.

June 7, 1933, the defendants, Angelo and Ernest Molinar, filed their answer and cross-petition in the action commenced as aforesaid, wherein they pleaded the execution and delivery by Hein to Angelo Molinar

of the promissory note and chattel mortgage above described; that Hein was insolvent, wholly unable to meet his obligations and without credit to replenish the stock of merchandise which was being depleted; that the mortgagee deemed the security granted by the chattel mortgage aforesaid unsafe and insufficient, and in consequence it was necessary for the defendants to take possession of all the property covered by said chattel mortgage, and that the foreclosure sale mentioned above had been in due course had, leaving a balance due the mortgagee from the mortgagor, as already indicated. The defendants' cross-petition sought a recovery from the plaintiff of the balance remaining unpaid.

The plaintiff Hein, in his reply filed June 16, 1933, admitted the execution and delivery to Angelo Molinar of the aforesaid chattel mortgage and the promissory note it secured, and denied all other material allegations of the defendants' answer and cross-petition.

Sometime after the commencement of the action and before its trial, Angelo Molinar died, and on April 12, 1934, a stipulation was signed by both the attorney for the plaintiff and the attorney for the "defendants" authorizing the entry of an order by the district court of Lincoln County in substantially the following form:

"Now come the parties hereto by their respective attorneys and suggest to the Court that Angelo Molinar, one of the defendants, has died since the commencement of this action, and that Minnie Molinar Marcante and J. A. Christmas have been duly appointed and have qualified as executors of the last Will and Testament of said Angelo Molinar. That the claim of plaintiff involved in this action as against Angelo Molinar, was filed and rejected, and the Court being fully satisfied thereof, and all parties consenting, It is hereby, on stipulation of said parties, ordered that this action stand revived as to Angelo Molinar in the name of Minnie Molinar Mercante and J. A. Christmas as said

executors, and proceed against them, and the pleadings now framed shall constitute the pleadings of the executors."

The stipulation was duly filed April 19, 1934, and the same day an order form was filed and order entered following the language of the stipulation.

Other counsel for the defendants was substituted in the case and the trial thereof proceeded before the court, with a jury in attendance, on December 6, 1935, with the result that a verdict was on December 7, 1935, returned in favor of the plaintiff, in the sum of $6000.00, upon which judgment, on December 14, 1935, was in due course entered, including costs of $117.85, whereby it was adjudged that plaintiff recover these amounts from the "defendants."

December 16, 1935, defendants filed their motion for a new trial, and on January 4, 1936, their supplemental motion for a new trial, supported by the affidavits of two of the jurors who had taken part in the trial of the case. These motions were by the court overruled on March 5, 1936.

On April 13, 1936, and at the same term at which the judgment aforesaid was rendered and entered, plaintiff filed his petition and motion to have it amended by inserting a provision therein that,

"It is Further Ordered, Adjudged and Decreed, that said defendants Minnie Molinar Marcante and J. A. Christmas, executors of the estate of Angelo Molinar, deceased, pay in due course of the administration of said estate the said amount of $6,000.00, with interest as aforesaid and costs as aforesaid."

Thereafter this application for amendment of the judgment was heard by the court, and no objections being filed or exceptions taken by defendants through their counsel, on April 21, 1936, an order was entered directing that the judgment be modified as sought. Accordingly, a modified judgment entry was made April 22nd

of that year. Thereafter the record in the case was brought here for review, as hereinbefore indicated. Such additional facts as may be needful to fully understand the questions presented will be mentioned in connection with what is hereinafter said.

Defendants insist that there is no pleading or proof on the part of the plaintiff of the fact of presentation of his claim to the executors of Angelo Molinar, deceased, and our attention is directed to Section 88-3111, W. R. S. 1931, and the case of Delfelder v. Farmers' State Bank, 38 Wyo. 481, 269 Pac. 418, 270 Pac. 1081, interpreting that section of the statute. But we think that neither the statute nor the decision is applicable here for several reasons. The stipulation whose language is quoted above, pursuant to which an order of court substituting the executors of Angelo Molinar as defendants was invoked and procured and pursuant to which the cause thereafter proceeded in its subsequent stages, makes it reasonably clear to our minds that the parties intended to and did remove any question of this character from the case. It must assuredly be presumed that counsel for defendants was acting for the executors in making the stipulation in the absence of evidence to the contrary. Knowing counsel as we do, who is now one of the district judges of this state, we are not inclined to believe that he would have signed such a stipulation affecting the executors and the estate in their care if he had been without authority to represent them. Additionally the matter came up in the course of the trial of the case and was then discussed by the court and counsel in the following colloquy:

"The Court: In the stipulation as to the order of revivor, I think it was stipulated.

Mr. Muir reading from stipulation in question) : . . . 'that the claim in this case was filed and rejected.' I guess that's right.

Mr. Kabell: We just offer in evidence the stipulation as contained in the files.

Mr. Muir: It is immaterial at this time, isn't it?

Mr. Kabell: I believe that our prima facie case should show a compliance with the statute.

The Court: Yes, I think that should be done. If it is admitted, that is all that is necessary.

Mr. Muir: We will admit that."

If parties stipulate or admit facts into the record, it is obviously unnecessary to plead or prove them.

It is argued that there was no evidence in the case that Ernest Molinar was authorized, instructed or directed by Angelo Molinar, the mortgagee, to act as he did in taking possession of the property under the chattel mortgage aforesaid and in connection with its foreclosure. But the record disclosed that Ernest Molinar was the manager of the A. Molinar Wholesale Grocery business; that he himself procured from Hein the chattel mortgage in question, and that on the witness stand, after stating that Angelo was not present in Kemmerer in January, 1933, his answer to the question, "Everything you did, however, was as manager and agent, isn't that true?" was, "Yes, sir." The point is without merit.

The supplemental motion for a new trial filed by the defendants was an attack upon the verdict of the jury grounded upon the claim that the result it announced was procured through the jury's misconduct in consequence of their arriving at their verdict by means of the quotient method. Affidavits of two of the jurors who tried the case as above mentioned were submitted in support thereof. We can only say that the trial court properly overruled the motion. The prior decisions of this court have settled the matter adversely to plaintiffs in error. See The Pullman Company v. Finley, 20 Wyo. 456, 125 Pac. 380; Morris v. State, 39 Wyo. 157, 270 Pac. 415; State v. Parker, 44 Wyo. 478, 13 Pac. (2d) 641.

It is claimed that there is error in the record because

the district court made the amendment of its judgment, as described above, after overruling the motions for a new trial filed by the defendants. But the defendants seem not to have objected or excepted in any way to the court's action in this respect. The amendment, too, was made at the same term at which the original judgment was entered, and we have no doubt of the court's power to do what it did in altering the judgment if it desired to do that. The amendment certainly was in accord with the theory on which the case was tried by both parties and the stipulation they signed substituting the executors of Angelo Molinar as defendants. If the defendant executors were liable in any amount, they were undoubtedly subject to an order directing them to pay such sum from the estate of the deceased.

Complaint is made for the plaintiffs in error that associate counsel for the plaintiff was guilty of misconduct in his argument before the jury. It is said that counsel stated that "the defendants were wealthy, and that the reason defendant, Ernest Molinar, caused the mortgage in question to be foreclosed was because he, Ernest Molinar, thought and assumed that the plaintiff or no other person in the Town of Kemmerer could take any action or do anything against anyone reputed to be worth One Hundred Thousand ($100,000.00) Dollars." If it is true that this was said, it was most improper and counsel passed beyond the bounds of fair argument. However, the record is silent concerning proof in the matter, and we may not consider it in the absence of timely objection or exception.

Over the objection and exception of the defendants the court gave the following instruction, which is alleged to be erroneous:

"The jury are instructed that in determining the amount of damages you should allow, if any, you are called upon to exercise your judgment upon the evidence in the case and to exercise your common sense

and common observation and experience in the affairs of life, and from all the evidence in the case to draw a reasonable and safe conclusion, and that in considering the evidence upon the loss to plaintiff by reason of the loss of the value of his property and business, the injury to the reputation and standing of said business in the community, and the amount of probable profits which would have accrued to him but for the acts of defendant, if you find such acts to have been wrongful, the measure, of damages to the plaintiff must be left to your sound discretion and good judgment, as shown by the evidence, uninfluenced by bias and prejudice and uncontrolled by mere conjecture, and that the time during which it is permissible to consider probable loss of future profits by reason of the injury to plaintiff's business must be determined in this case according to your best judgment under all of the circumstances in evidence and upon your own knowledge and sense of justice, and you should consider: (1) the value of the stock of goods; (2) the loss of probable profits for such length of time as the plaintiff has suffered from said acts of defendants as you determine from the evidence would be reasonably safe and prudent; (3) loss of reputation and standing of said business; and (4) if wantonness and malice are shown, exemplary and punitive damages."

We think it was error to give this instruction. It is long and involved and its meaning, or a portion thereof, is far from clear. Thereby the jury were told that, "the measure of damages to the plaintiff must be left to your sound discretion and good judgment, as shown by the evidence." Now, the "measure of damages" is never shown by the evidence, but is a rule of law prescribing the method of their assessment; neither is the sound discretion and good judgment of a jury "shown" by the evidence. It will be observed, also, that the jury were given to understand by this instruction that they might allow damages to the plaintiff by reason of the loss of the value of his property and business and also probable profits which would have accrued to him but for the defendants' acts. It seems to us that these items

of damage overlapped each other and if plaintiff obtained damages for the loss of his property and business, he should not have also a recovery for probable profits inasmuch as through the use of his property and business he obtained his profits.

In Woodring v. Winner National Bank, 56 S. D. 43, 227 N. W. 438, it was held that in an action by those who took over a meat market and purchased personal property therein against creditors of the former proprietor, for damages on account of the seizure of his property by an officer at the creditors' instance, plaintiffs were not entitled to recover damages for both loss of profits and the value of the use and occupation of the premises and tools during the period of the time of their ejectment until the premises were restored to them. And the court said:

"According to the testimony on behalf of plaintiffs, they were deprived of possession for 35 days and their average profits would have been $15 a day. Under the evidence loss of profits did not exceed $525. The value of the use and occupancy of the premises and tools were said to be $50 a week. The profits could only be realized by using the premises and tools, so that it is clear that plaintiffs would not be entitled to recover both for loss of profits and for use and occupancy of the premises and tools. * * * The instruction that triple damages might be recovered in this action was erroneous, as was also the allowance of damages both for use and occupation of the premises and for loss of profits which could only be made by such use and occupation."

It is also urged against the propriety of the quoted instruction that it erroneously authorized the jury to consider "loss of probable profits for such length of time as the plaintiff has suffered from said acts of the defendants as" the jury might "determine from the evidence would be reasonably safe and prudent"; it being said that this direction to the fact-finding body really fixed no limit to the time for which the jury

might assess damages for probable profits from plaintiff's business.

The foregoing instruction it may be observed seems to have been modeled rather closely after an instruction expressly held erroneous, which was given by the trial court in Tootle v. Kent, 12 Okla. 674, 73 Pac. 310. In that case a stock of merchandise had been taken possession of by the mortgagee and the store where the stock had been located for sale closed at the time possession was taken. Subsequently one of the partners instituted a civil action, wherein a receiver was asked for and obtained. Upon his qualification, the officer immediately took possession of the merchandise in the store. In disapproving the aforesaid instruction given in the case, the court said:

"The latter portion of instruction 2, which reads as follows, is especially objectionable: "and that the rule which should govern the assessment of damages, as to the length of time during which the plaintiff has and will in the future suffer injury from said acts of the defendants, is such length of time as you can feel that, acting under your oaths and the obligations you have assumed, and from the evidence you can say would be reasonably safe and prudent. * * * The court should have charged, on the question of the probable profits, that the measure of damages was the loss of probable profits from the time that Tootle, Wheeler & Motter took charge of the goods under the chattel mortgage, until they passed into the hands of the receiver."

We are of opinion, if the recovery of probable profits was at all to be had, that the period of time to be considered in connection therewith should have been limited to the months plaintiff was kept out of possession of the premises by the defendants. By the time the foreclosure and sale of the property had occurred, or certainly by the time when the fixtures were sold by the mortgagee thereof, such period should be limited. Subsequent to that time what the profits or the loss

thereof would be, would be largely speculative and conjectural, and recovery of these is almost universally not allowed. 17 C. J. 795-796, Sec. 117, and cases cited.

Over the objection and exception of the defendants the court gave another instruction which like the one just considered authorized the finding by the jury of exemplary damages against the defendants indiscriminately. It should be recalled here that the defendants, other than Ernest Molinar, are the executors of the will of Angelo Molinar, deceased. The rule appears to be thoroughly established that executors of an estate cannot be held liable for exemplary damages in consequence of a tort committed by their testator, when the latter has died after the commencement of the action to assess damages therefor and before trial.

In Evans v. Gibson, 220 Calif. 476, 31 Pac. (2d) 389, the defendant in a fraud action died after the litigation had been begun, but before trial. Holding that no recovery could be had for exemplary damages against the executrices of the tort-feasor, the Supreme Court of California said:

"An action in tort to recover compensatory damages for injury to property, rather than to the person, survives, but after the death of the defendant tort-feasor exemplary damages cannot be awarded against his estate or his executrices. Such damages are allowed 'in addition to the actual damages,' and 'for the sake of example and by way of punishing the defendant.' Section 3294, Civ. Code. In Pacific, etc., Co. v. Packers' Ass'n, 138 Cal. 632, 638, 72 P. 161, 164, it is declared that 'punitive damages are given as punishment beyond what a plaintiff has actually suffered.' Since the purpose of punitive damages is to punish the wrongdoer for his acts, accompanied by evil motive, and to deter him from the commission of like wrongs in the future, the reason for such damages ceases to exist with his death. It is true that the infliction of punishment serves as a deterrent to the commission of future wrongs by others as well as by the wrongdoer, but punitive dam-

ages by way of example to others should be imposed only on actual wrongdoers."

To the same effect as the case last cited is Sullivan v. Associated Bill Posters & Distributors, 6 Fed. (2d) 1000 (C. C. A.) 42 A. L. R. 503; Lane v. Schilling, 130 Or. 119, 279 Pac. 267, 65 A. L. R. 1042, and comprehensive note at page 1049 of 65 A. L. R., where the cases are cited, and the author of the note states that:

"The general rule seems well settled, at least as to personal representatives, that neither the representative of a deceased person,—an executor or administrator,—nor the representative of an insolvent corporation,—a receiver,—is liable for exemplary or punitive damages in an action begun or continued against such representative for a tort committed by the deceased person or the insolvent corporation."

See also 8 R. C. L. 595, Sec. 139; 1 Sedgwick on Damages (9th Ed.) 710, Sec. 362; 17 C. J. 989, Sec. 289.

It is generally held to be error to submit the question of punitive damages to the determination of the jury when there is no basis for them. 17 C. J. 973 and cases cited in Note 13; 17 C. J. 1081, Sec. 388. It may not be argued here that as the verdict of the jury is for a sum well within the amount which they might have awarded by way of compensatory damages,—and we do not think it was—we should hold that in fact the award was made for compensatory damages exclusively. Declining to approve a similar contention, in Lewis v. Hayes, 165 Cal. 527, 132 Pac. 1022, the court said:

"Respondent admits and indeed contends that the evidence justifies an award of punitive damages, and she not only argues this, but urged her views upon the court by way of the instructions which the court gave upon the subject. It is not within our power or province to segregate the general verdict of the jury into its component elements of an award for compensatory and an award for punitive damages. So far as this court can be advised, it may be composed of the one or

the other or of both. Upon the other hand it is quite within the power of either litigant to avoid any such embarrassment by providing for separate awards. Davis v. Hearst, supra, 160 Cal. page 169, 116 Pac. 530."

Bearing in mind, too, that all the property in the plaintiff's business was heavily mortgaged, that his business profits were decreasing, that he was badly in arrears for rent of the premises where his business was being carried on, that he was in a similar precarious situation in regard to his bills payable for light, heat and water, and that he was using mortgaged property for payment of other creditors' claims against him, we may say that we are satisfied from the record that the verdict and judgment for $6000.00 is to a large extent composed of exemplary and punitive damages, which could not be allowed as against the executors of Angelo Molinar, deceased. The instructions as given permitting punitive damages were erroneous.

The testimony of two witnesses concerning the value of plaintiff's business as a going concern is criticized by plaintiffs in error as inadmissible, because largely in the nature of guesswork. It was admitted over the objection and exception of the plaintiffs in error to that effect. We are inclined to think the criticism is justifiable and the testimony in the form in which it was received should have been excluded. The witnesses did not purport to give their testimony taking into consideration all of the factors which bore on the true value of the business as a going concern, some of which undoubtedly would be the financial obligations of the business, its current expenses and its credit rating. The witness Toone admitted that his testimony was "all a guess," based merely on the stock Hein purchased and his turnover in goods; the witness McGloan based his estimate of value of the business as a going concern simply "on the amount of business" Hein "was doing."

These estimates of value afforded the jury no reliable aid in determining the true worth of the plaintiff's business so far as we are able to see.

Other points have been argued by the parties, but as the case must return to the district court for a retrial and these questions may not again arise, we shall not at this time give them consideration so as to unduly extend this opinion.

For the errors hereinabove indicated the judgment must be reversed and the case remanded to the district court of Lincoln County, with instructions to grant a new trial.

*Reversed and remanded.*

BLUME, Ch. J., and KIMBALL, J., concur.