466 P.2d 60

H. D. BRAUN, personal representative of Rose Braun, deceased, Appellant,

v.

Julia F. MORENO, personal representative of Vincente O. Moreno, deceased, Appellee.

No. 2 CA–CIV 743.

Court of Appeals of Arizona, Division 2.

March 5, 1970.

Rehearing Denied April 14, 1970.

Review Denied May 5, 1970.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellant.

Miller, Pitt & Feldman, by Robert F. Miller, Tucson, for appellee.

KRUCKER, Judge.

This appeal presents for review only the *amount* of a judgment entered on a jury's verdict in a wrongful death action. (Appellee was plaintiff in the trial court and appellant was the defendant.) The only issues submitted to the jury were those bearing on damages, the court having directed a verdict in favor of the plaintiff on the liability issue. The jury returned a verdict in the amount of $53,293.00 as compensatory damages and $20,000.00 as punitive damages. The defendant's subsequent motion for new trial or, in the alternative, a remittitur, was denied.

Briefly, the facts are as follows. The automobile collision which gave rise to this litigation occurred on Interstate 10, a controlled access highway, at approximately 5:00 p.m. on October 19, 1967. Interstate 10 is a divided highway with a 68-foot dirt median between eastbound and westbound lanes of travel. There are two lanes of travel for eastbound traffic and the vehicle of defendant's decedent was proceeding in a westerly direction in the most northerly lane of the eastbound traffic lanes (the wrong direction) at the rate of 45 to 55 miles per hour. It collided with a vehicle driven by the plaintiff's decedent which was proceeding in an easterly direction in the same lane. Both drivers were killed in this collision, Mrs. Braun almost immediately. Neither regained consciousness after the accident.

The plaintiff's decedent was 26 years old and unmarried. The wrongful death action was brought for the benefit of his parents, his mother, age 52, and father, age 65. The life expectancy of the decedent was 44.9 years, his mother's life expectancy was 22 years, and his father's was 12.9 years. The decedent lived with his parents and contributed $60 to $80 per month for his room and board. In addition to per-

forming numerous chores around the home, such as painting, he was very devoted to his parents and provided them with guidance and companionship. His death resulted in some physical and emotional disturbance to the parents.

The decedent, a graduate of the University of Arizona, was in good health and had a teaching certificate qualifying him to teach two subjects in grades 7 to 12. Although he had never taught, had he done so he would have started at a salary of $5,900.00 per year. At the time of his death, he was earning only $3,895.00 per year, but had he continued in his employment, there was a good possibility that he would have earned $6,500 to $7,000 per year in the normal course of advancement. He was very well liked by all who worked with him, participated in many church-affiliated activities, and contributed his services to various projects at the University of Arizona. According to one witness, " * * * he was a figure in the whole family," or, in other words, "His concern, especially for his parents, and for his family, make him a center of the family."

The defendant-personal representative attacks the punitive damages award of $20,000 on several grounds. His initial contention is that such damages are not recoverable against the estate of a deceased tortfeasor. A.R.S. § 12–613 provides:

"In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. * * *"

Our Supreme Court, in Boies v. Cole, 99 Ariz. 198, 407 P.2d 917 (1965), has held that the language of this statute permits recovery of punitive damages in wrongful death actions. See also, Southern Pacific Company v. Barnes, 3 Ariz.App. 483, 415 P.2d 579 (1966). In Boies, supra, however, the tortfeasor was not deceased, and the only question was whether the legislature had evidenced an intent that punitive damages be recoverable in a wrongful death action.

The defendant cites numerous cases in support of his position that punitive damages are not recoverable against the estate of a deceased person. See e. g., Dalton v. Johnson, 204 Va. 102, 129 S.E.2d 647 (1963); Marcante v. Hein, 51 Wyo. 389, 67 P.2d 196 (1937); Morriss v. Barton, 200 Okl. 4, 190 P.2d 451 (1947); Evans v. Gibson, 220 Cal. 476, 31 P.2d 389 (1934); Tietjens v. General Motors Corporation, 418 S.W.2d 75 (Mo.1967); Hayes v. Gill, 216 Tenn. 39, 390 S.W.2d 213 (1965); and Barnes v. Smith, 305 F.2d 226 (10th Cir. 1962).

Many of the cases cited by the defendant, however, are not apposite since the construction of a wrongful death statute was not therein involved. We likewise are not impressed with the Florida case of Atlas Properties, Inc. v. Didich, Fla., 226 So. 2d 684 (1969), relied upon by the plaintiff, for two reasons: the statute construed by the court was a survival statute and the defendant was not the tortfeasor's estate.

We are favorably inclined, however, to the view of the 10th Circuit Court of Appeals in Barnes v. Smith, supra, since the New Mexico wrongful death statute,[1] like ours, permits recovery of punitive damages. In fact, the language of the New Mexico statute is even more explicit. The federal court, in following the general rule that punitive damages are not available from the tortfeasor's estate, reasoned that " * * * the reason for their imposition can no longer be effective." (305 F. 2d at 231). Punitive damages are not to compensate an injured person for the loss

1. N.M.S.A.1953, 22–20–3:
" * * * the jury in every such action may give such damages, *compensatory* and *exemplary*, as they shall deem fair and just * * * and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default." (Emphasis added)

**512**

sustained, but to punish a defendant for his conduct. Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966). Since the deceased tortfeasor can in no way be punished by the award of punitive damages, we see no reason for allowing such damages to be assessed. When the reason for a rule ceases to exist, the rule itself is no longer of value and is extinguished by the disappearance of the reason. We hold, therefore, that the issue of punitive damages should not have been submitted to the jury.

The defendant additionally attacks as excessive the amount of compensatory damages awarded. He contends that the trial court should have granted a remittitur in the amount of at least $25,000. Of course the size of the verdict alone does not mandate a conclusion that it was the product of prejudice and passion. Meyer v. Ricklick, 99 Ariz. 355, 409 P.2d 280 (1965). The initial responsibility for reducing an excessive verdict is with the trial court, Newman v. Piazza, 6 Ariz.App. 396, 433 P.2d 47 (1967); Allied Van Lines v. Parsons, 80 Ariz. 88, 293 P.2d 430 (1956). Where, as here, the trial court has refused to interfere with the jury's determination of damages, this court cannot interpose its own judgment on the issue unless convinced that the verdict is so outrageously excessive as to suggest, at first blush, passion or prejudice. Skousen v. Nidy, 90 Ariz. 215, 367 P.2d 248 (1961); Swails v. General Electric Company, 264 Cal.App.2d 82, 70 Cal.Rptr. 143 (1968). In other words, the conscience of this court must be "shocked" by the amount of the award before we tamper with the jury's determination.

We cannot say that we are shocked by the amount awarded to these parents for the loss of their son, who lived with them and contributed financially and otherwise to the maintenance of the family home, upon whom they relied for guidance and companionship, and whose loss caused much grief and mental anguish to the surviving parents.[2] We therefore decline to interfere with the jury determination as to compensatory damages.

Since punitive damages were not properly assessable against Mrs. Braun's estate, it is ordered that the judgment be reduced in the amount of $20,000 and in all other respects it is affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.

---

2. See, "An Arizona Law Institute on Wrongful Death in Arizona" (1968), page 76 et seq., for a discussion of the elements of compensatory damages.