494 P.2d 711

Elsie A. PRICE and Charles Gattman Price, a minor, Appellants,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut corporation, and Gary Ronald Gardner, Appellees.

No. I CA–CIV 1591.

Court of Appeals of Arizona, Division 1, Department A.

March 16, 1972.

Rehearing Denied April 5, 1972.

Review Granted May 31, 1972.

Beer & Kalyna, by Olgerd W. Kalyna, Phoenix, for appellants.

Renaud, Cook, Miller & Cordova, P. A., by J. Gordon Cook, Phoenix, for appellee Hartford.

Kenneth L. Rosengren, Phoenix, for appellee Gardner.

CASE, Judge.

Appellants Elsie Price and Charles Price, plaintiffs in the trial court, filed an action seeking a declaratory judgment against appellees-defendants Hartford Accident and Indemnity Company and Gary Gardner. The parties will be referred to as they appeared in the trial court.

The complaint alleged that defendant Hartford had issued two policies of insurance to plaintiff Elsie Price which insured a 1969 Camaro automobile and that on or about 4 January 1970 this automobile, while being driven by her son, defendant Charles Price, with her permission, was involved in an accident arising out of a drag race. Defendant Gary Gardner, a motorcycle patrolman for the City of Phoenix, sustained injuries as a result of that accident and, as a consequence, instituted suit against defendant Charles Price alleging in part that he was guilty of "gross negli-

gence and wanton conduct", and further alleging that defendant Elsie Price was liable by virtue of her statutory liability for her son's conduct. The complaint further alleged that defendant Hartford had agreed to defend the action but had informed the plaintiffs that it would deny coverage for any punitive damages which might be awarded. After defendants filed their answer, each side agreed that since there was no dispute as to any material issue of fact, the trial court should determine whether the Hartford policy insured Elsie or Charles Price for the punitive damages claimed by defendant Gardner. The trial court held that the policy did not insure Charles Price as to any liability for punitive damages; that the policy did not insure Elsie Price to either defend or pay concerning punitive damages claimed against her by defendant Gardner based on any conduct in which she participated and that the policy did insure Elsie Price to pay and defend regarding punitive damages that may be awarded defendant Gardner based on conduct in which she did not participate and which damages are based on indirect responsibility such as any vicarious liability.

Plaintiffs' notice of appeal designates the following portions of the judgment from which the appeal is taken:

" '2. Public policy of the State of Arizona precludes coverage for such damages whether it be to pay or defend, arising out of conduct participated in by an insured of said policy.'

\* \* \* \* \* \*

" '1. That HARTFORD ACCIDENT AND INDEMNITY COMPANY does not insure CHARLES GATTMAN PRICE at all, either to defend or pay, concerning punitive damages claimed against him by GARY RONALD GARDNER.'

\* \* \* \* \* \*

" '2. That HARTFORD ACCIDENT AND INDEMNITY COMPANY does not insure ELSIE A. PRICE at all, ei-

ther to defend or pay, punitive damages for conduct in which she participated.' "

Though no cross-appeal was filed, Hartford's brief questions the correctness of the trial court's conclusion that the policy language per se included punitive damages within the insured risks. This issue will not be discussed further inasmuch as defendant thereby attempts to enlarge his own rights, a matter properly cognizable by this Court only after perfection of an appeal or cross-appeal, neither of which defendant attempted. Santanello v. Cooper, 106 Ariz. 262, 475 P.2d 246 (1970); Maricopa County v. Corporation Commission of Arizona, 79 Ariz. 307, 289 P.2d 183 (1955).

The only issue then before the Court is:

Does Public Policy Prevent An Insurance Company from Insuring the Risk That the Insured will engage in Wanton, Reckless or Grossly Negligent Conduct and thus be Subject to a Possible Punitive Damage Award in a Lawsuit Based on Negligence?

This issue is justiciable and properly the subject of a declaratory judgment action. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L. Ed. 826 (1941).

The issue of whether public policy relieves an insurance company from paying punitive damages in a negligence action based on gross, wanton or reckless conduct has been dealt with in a few cases with varying results. In Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962), Judge Wisdom stated in applying Florida and Virginia law:

"Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.

**513**

\* \* \* \* \* \*

"If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured.

\* \* \* \* \* \*

"[A]ccepting as common knowledge the fact that death and injury by automobile is a problem far from solved by traffic regulations and criminal prosecutions, it appears to us that there are especially strong public policy reasons for not allowing socially irresponsible automobile drivers to escape the element of personal punishment in punitive damages when they are guilty of reckless slaughter or maiming on the highway." Id. at 440, 441.

Accord, American Surety Co. of New York v. Gold, 375 F.2d 523 (10th Cir. 1966), applying Kansas law; Nicholson v. American Fire and Casualty Ins. Co., 177 So.2d 52 (Fla.App.1965); Tedesco v. Maryland Casualty Co., 127 Conn. 533, 18 A.2d 357 (1941); Crull v. Gleb, 382 S.W.2d 17 (Mo.App.1964); LoRocco v. N. J. Mfrs. Ind. Ins. Co., 82 N.J.Super. 323, 197 A.2d 591 (1964); Esmond v. Liscio, 209 Pa.Super. 200, 224 A.2d 793 (1966); Teska v. Atlantic National Insurance Co., 59 Misc. 2d 615, 300 N.Y.S.2d 375 (1969); Ging v. American Liberty Ins. Co., 423 F.2d 115 (5th Cir. 1970), applying Florida law; Commercial Union Ins. Co. of New York v. Reichard, 404 F.2d 868 (5th Cir. 1968), applying Florida law.

Other courts have found no public policy prohibition from permitting insurance companies to pay punitive damage awards. They respond to Judge Wisdom's arguments by noting (1) that inasmuch as criminal sanctions have failed to end highway slaughters it is at most speculative to assume that closing the insurance market will decrease the slaughter, (2) that insurance policies which appear to cover all damages arising out of the negligent operation of automobiles should be construed liberally in favor of the insured and not be partially declared void under public policy except in the clearest case, (3) that the extent of coverage will vary with the whim of the jury which cannot accurately distinguish between ordinary and gross negligence. Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639, 383 S.W.2d 1 (1964); Southern Farm Bureau Casualty Ins. Co. v. Daniel, 246 Ark. 849, 440 S.W. 2d 582 (1969).

■ The first argument assumes, without supporting evidence, that absent criminal sanction, the rate and severity of highway accidents would be unchanged. We see no basis for such an assumption. In Arizona, the purpose of punitive damages is not to compensate the injured plaintiff but rather to punish the defendant for his misconduct. Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966); Braun v. Moreno, 11 Ariz.App. 509, 466 P.2d 60 (1970). Permitting a wrongdoer to shift the burden of payment to an insurance company would negate the very purpose of punitive damages, i. e., punishment.

■ Strongly entrenched in our law is the proposition that ambiguous language in insurance contracts must be interpreted in favor of the insured and against the insurer. Aetna Casualty and Surety v. Scott, Ariz., 491 P.2d 463 (filed Dec. 13, 1971); D. M. A. F. B. Fed. Cr. U. v. Employers Mut. L. Ins. Co. of Wis., 96 Ariz. 399, 396 P.2d 20 (1964). This proposition has no applicability to the case at bar inasmuch as the trial court determined that the policy

**514**

language covered punitive damage awards. We are asked herein only to determine whether public policy voids such coverage.

The third argument is in essence an attack on our jury system. We must assume that a jury will follow the instructions and correctly decide the issues presented, in the absence of a clear showing to the contrary. Such possible discrepancies are best handled on a case-by-case basis and do not detract from the conclusion reached herein.

We further note that our Financial Responsibility Law, A.R.S. § 28–1101 et seq. requires that motor vehicle liability policies insure "against loss from the liability imposed by law for damages . . ." A.R.S. § 28–1170 (as amended 1961); Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963). The purpose of this law is to compensate persons injured in automobile accidents, Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963), and not to insulate reckless drivers from possible punitive damage awards. The Financial Responsibility Law does not vary the result herein.

For the reasons previously expressed, we find that public policy prevents an insurance company from paying an award for punitive damages in an automobile negligence action when the insured has participated in the gross, wanton or reckless misconduct.

The pleadings reveal that Hartford agreed to defend the instant action, thus creating no issue for determination regarding their duty to defend. Accordingly, the trial court's judgment that Hartford had no duty to defend the portion of the action concerning punitive damages was beyond the scope of the instant litigation and, thus, of no force or effect. Mullen v. Gross, 84 Ariz. 207, 326 P.2d 33 (1958).

Judgment affirmed in part and reversed in part.

STEVENS, P. J., and DONOFRIO, J., concur.