Patricia J. PARKER and William R. Parker, Appellants (Plaintiffs),

v.

Susan D. ARTERY, Personal Representative of the Estate of J. Doyle Pounder, Deceased, Appellee (Defendant).

No. 93–243.

Supreme Court of Wyoming.

Feb. 9, 1995.

Bruce B. Waters and John E. Stanfield of Smith, Stanfield & Scott, Laramie, for appellants.

Gary R. Scott of Hirst & Applegate, Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY and TAYLOR, JJ.

TAYLOR, Justice.

The injured parties in a tort action bring this appeal. A jury trial resulted in a verdict and a substantial award of compensatory damages in favor of the injured parties. However, the injured parties contend pretrial rulings of the district court and a variety of procedural errors unfairly restricted the presentation of facts to the jury. The injured parties also claim they were denied the full measure of their damages.

We affirm.

## I. ISSUES

Among the issues on appeal, the injured parties insist they should have been permitted to inform the jury that an intoxicated tortfeasor ran a stop sign and caused a severe collision. The injured parties also argue the jury should have been permitted to consider awarding punitive damages, despite the death of the tortfeasor before trial. Furthermore, the injured parties assert that the jury should have been instructed that liability insurance coverage existed to pay the damage award.

The personal representative of the tortfeasor responds that liability for the collision was admitted, so the fact that the tortfeasor was legally intoxicated at the time of the collision was irrelevant. The personal representative maintains that Wyoming should continue to follow the rule that recovery of punitive damages is not allowed from a tortfeasor's estate. Finally, the personal representative declares that there was no reason to instruct the jury of the existence of liability insurance coverage.

## II. FACTS

On June 23, 1990, Patricia J. Parker (Parker) drove her van west on Palmer Canyon Road just outside Wheatland, Wyoming. As Parker approached the intersection with Grange Road, a vehicle driven by J. Doyle Pounder (Pounder) failed to stop at the stop sign controlling north and south bound traffic. Parker's van collided with Pounder's vehicle. Following the impact, Parker's van veered to the right, hit a ditch, jumped over a cement culvert and came to rest at a fence. Parker's injuries included a number of cuts

* Retired July 6, 1994.

and bruises, a broken fibula and a fractured vertebra.

Pounder was arrested at the scene of the accident and charged with driving while under the influence. A test revealed that the alcohol content of Pounder's blood was in excess of the legal limit. On February 1, 1992, Pounder died in Washington of causes unrelated to the collision.

On June 23, 1992, Parker and her husband (collectively, the Parkers) filed a personal injury action against Pounder's estate (estate) demanding compensatory and punitive damages. Susan D. Artery agreed to serve as personal representative of the estate (personal representative) for the purposes of this action.

Before trial, the personal representative admitted that Pounder's negligence was the sole cause of the collision. Additionally, the district court dismissed, with prejudice, the Parkers' claim for punitive damages. When the action went to trial, only three narrow issues remained undecided: the extent of compensatory damages to Parker; the extent, if any, of loss of consortium damages to Mr. Parker; and the extent of the damage to the van.

The jury awarded a total of $110,000.00 in damages, including: $92,000.00 to Parker for her injuries and for her pain and suffering; $7,000.00 to Mr. Parker for loss of consortium; and, $11,000.00 for damage to the Parkers' van. Following entry of the judgment, the district court allowed the personal representative to deposit the judgment amount with the district court, which agreed to hold the funds in an interest bearing account. The Parkers objected to this procedure. After a hearing, the district court ordered that the $110,000.00 be deposited in an interest bearing account or interest bearing instrument as selected by the Parkers. The district court also ordered the Parkers to be responsible for paying income tax on any interest earned while the funds were deposited with the district court.

One day after the judgment was entered, the Parkers filed a motion for a new trial. The district court denied the motion. The Parkers then filed a timely notice of appeal.

## III. DISCUSSION

### A. EVIDENCE OF INTOXICATION

The Parkers claim that they should have been allowed to present the jury with evidence regarding Pounder's intoxication at the time of the collision. The district court ruled this evidence was inadmissible because it was irrelevant to the determination of the extent of the compensatory damages suffered by the Parkers. We agree with the district court.

■ We review a district court's ruling on admissibility of the evidence under an abuse of discretion standard. *Furman v. Rural Elec. Co.*, 869 P.2d 136, 140 (Wyo.1994); *L.U. Sheep Co. v. Board of County Com'rs of County of Hot Springs*, 790 P.2d 663, 673 (Wyo.1990). "Abuse of discretion occurs when a court exceeds the bounds of reason or commits an error of law." *Combs v. Sherry–Combs*, 865 P.2d 50, 55 (Wyo.1993).

Before trial, the personal representative stipulated that Pounder's negligence was the sole proximate cause of the collision. Exercising its discretion, the district court determined that evidence proving or disproving the extent of the compensatory damages the Parkers suffered was the only relevant evidence before the jury. The district court granted a motion in limine which excluded statements or questions during the trial regarding Pounder's intoxication.

The Parkers maintain that they had a right to present their entire case to the jury, including the fact that Pounder was intoxicated at the time of the collision. The Parkers assert the jury was entitled to weigh this evidence to determine the proper amount of damages. If the jury had been permitted to hear this evidence, the Parkers argue that public policy against drunken driving would have benefitted.

The admissibility of evidence is governed by W.R.E. 401, 402 and 403. W.R.E. 401 defines what is "relevant evidence" during a trial:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable

or less probable than it would be without the evidence.

W.R.E. 402 states that generally, all relevant evidence is admissible; irrelevant evidence is inadmissible. W.R.E. 403 provides a balancing test for the exclusion of relevant evidence:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ The district court correctly ruled that evidence of Pounder's intoxication at the time of the collision was inadmissible. W.R.E. 402. The questions before the jury concerned the extent of the damages suffered by the Parkers. The cause of those damages, Pounder's failure to stop at an intersection while impaired, was no longer at issue. The personal representative had stipulated to Pounder's legal responsibility for the injuries to the Parkers. The jury was informed that Pounder had failed to stop at the stop sign and caused a collision. The only relevant evidence, therefore, was evidence which would have had a tendency to make more probable the proof of the extent of the compensatory damages suffered by the Parkers. W.R.E. 401.

The Parkers rely upon *Furman*, 869 P.2d 136, as additional authority for their argument that the district court should have admitted evidence of Pounder's intoxication. In *Furman*, this court permitted the introduction of evidence of drug use prior to an accident. *Id.* at 140–41. The evidence of drug use in *Furman* was admitted during the liability phase of the trial and was relevant. *Id.* However, Pounder's liability for the injuries to the Parkers was admitted. The evidence of Pounder's intoxication, therefore, was irrelevant to the determination of compensatory damages.

■ The Parkers argue that black letter law recognizes a party is not required to accept the judicial admission of an adversary; but, instead, may insist on proving the fact. *See, e.g., Barnes v. State*, 858 P.2d 522, 528 (Wyo.1993) and *Parr v. United States*, 255 F.2d 86, 88 (5th Cir.), *cert. denied*, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958). This rule of law, however, is subject to the balancing test of W.R.E. 403. *See, e.g., Barnes*, 858 P.2d at 529 and *United States v. Provenzano*, 620 F.2d 985, 1004 (3rd Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980).

■ The probative value of the evidence of Pounder's intoxication to the damages issues before the jury was substantially outweighed by the danger of unfair prejudice. W.R.E. 403. The jury was being asked a series of narrow questions regarding the extent of the compensatory damages suffered by the Parkers. Compensatory damages are limited to the general and special damages which compensate for the total harm proximately caused by the breach of a duty owed to the injured party. *Martinez v. City of Cheyenne*, 791 P.2d 949, 959 (Wyo.1990); Black's Law Dictionary 390 (6th ed. 1990). The introduction of evidence of intoxication would have unfairly prejudiced the jury to enhance the compensatory damages as a means of punishing Pounder. Despite society's revulsion at drunken driving, our system of justice reserves such civil punishment to awards of punitive damages. *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292, 1298 (Wyo. 1991).

The effect of trial practice rules may seem unduly harsh in circumstances such as these; however, the jury reached a fair verdict and the Parkers received a substantial damage award to compensate them for the injuries they suffered. Improper emotional pleas to the jury, based upon irrelevant or prejudicial evidence, were avoided by a carefully controlled trial proceeding.

We hold the district court did not abuse its discretion in ruling the evidence of intoxication was inadmissible to establish the extent of the compensatory damages suffered by the Parkers.

## B. PUNITIVE DAMAGES

■ Pounder died before this action was filed. Nevertheless, the Parkers insist they should have been allowed to pursue their

claim for punitive damages against the estate. The decision to award punitive damages is within the discretion of the district court and will not be reversed on appeal without a finding of a clear abuse of that discretion. *Sheridan Commercial Park, Inc. v. Briggs,* 848 P.2d 811, 818 (Wyo.1993); *Squaw Mountain Cattle Co.,* 804 P.2d at 1298.

■■ Wyoming follows the general rule that punitive damages may not be recovered from the estate of a deceased tortfeasor. 1 J.D. Lee & Barry A. Lindahl, *Modern Tort Law* § 21.35 (Rev.Ed.1994); 1 James D. Ghiardi & John J. Kircher, *Punitive Damages Law & Practice* § 9.10 (1987 & Cum. Supp.1993); 25 C.J.S. *Damages* § 125(3) (1966). In *Marcante v. Hein,* 51 Wyo. 389, 406, 67 P.2d 196, 202 (1937), we held that "executors of an estate cannot be held liable for exemplary damages in consequence of a tort committed by their testator[.]" The terms "punitive damages" and "exemplary damages" have an identical meaning. *Squaw Mountain Cattle Co.,* 804 P.2d at 1298.

The Parkers argue that the deterrent value of punitive damages should serve as a basis for reversing the "archaic" rule of *Marcante.* The Parkers refer specifically to our comments in *Weaver v. Mitchell,* 715 P.2d 1361, 1369–70 (Wyo.1986) and *Campen v. Stone,* 635 P.2d 1121, 1123 (Wyo.1981). In *Weaver,* 715 P.2d at 1370, we noted the importance of public condemnation of "some notorious action or inaction on the part of the defendant." In *Campen,* 635 P.2d at 1123, we stated that "[t]he design of punitive damages is deterrence through public condemnation and the damages awarded should be narrowly tailored toward that end." These cases, however, did not involve a deceased tortfeasor.

■ Public policy is not served by permitting the recovery of punitive damages against the estate of a deceased tortfeasor. The purpose of punitive damages is to punish the tortfeasor and deter *that person* from repeating the wrongful act in the future; however, the reason for awarding punitive damages ceases to exist with the death of the tortfeasor. *Marcante,* 67 P.2d at 202 (*quoting Evans v. Gibson,* 220 Cal. 476, 31 P.2d

389, 395 (1934)). The Supreme Court of New Mexico accurately summarized: "When the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages." *Jaramillo v. Providence Washington Ins. Co.,* 117 N.M. 337, 871 P.2d 1343, 1351 (1994).

■ We hold the district court did not abuse its discretion by dismissing the Parkers' claim for punitive damages.

### C. Jury Instructions

The Parkers also contend that the district court erroneously failed to respond to a message from the jury requesting additional instruction and information. During their deliberations, the jury submitted four questions to the court:

1. Did the Parkers have health insurance?

2. Can we consider any reimbursement by an insurance company to be deducted from the compensation? In the future?

3. Should we consider attorney fees as part of the settlement?

4. Did Parkers receive any compensation from any insurance company for their van?

Despite objections from the Parkers, the district court refused to answer the questions from the jury. The district court informed the jurors that they were required to complete the verdict form on the basis of the evidence presented and the instructions previously given.

■ Jury instructions are reviewed as a whole to determine if the jury instructions adequately and clearly advised the jury of the applicable law. *Kemper Architects, P.C. v. McFall, Konkel, & Kimball Consulting Engineers, Inc.,* 843 P.2d 1178, 1182 (Wyo. 1992). Reversible error is found only if substantial rights were prejudiced. *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.,* 743 P.2d 880, 885 (Wyo.1987). Prejudice occurs when an instruction misleads or confuses the jury regarding the applicable law. *L.U. Sheep Co.,* 790 P.2d at 672.

The Parkers contend that the district court's response "hid the truth" and denied the jury's right to know about the role of insurance in an action for damages. The Parkers argue that the questions from the jury reflected thoughtful deliberation which deserved a complete answer. We disagree.

■ The district court correctly refused to answer the questions from the jury. First, the jury asked for additional instruction on irrelevant issues of law, including attorney fees. Second, the jury inquired about facts which were not in evidence, specifically evidence of insurance coverage. *See DeJulio v. Foster*, 715 P.2d 182, 187 (Wyo. 1986) (affirming jury's verdict despite refusal of district court to answer jury's request for additional information not introduced in evidence).

■ Knowledge of insurance coverage would have tainted the findings of the jury and constituted reversible error. The introduction of evidence of liability insurance is prohibited in certain circumstances:

> *Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully.* This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

W.R.E. 411 (emphasis added). The purpose of this rule is to prevent the deliberate introduction of evidence of liability insurance coverage in tort actions premised on negligence. *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 829 (Wyo.1994); *Carlson v. BMW Indus. Service, Inc.*, 744 P.2d 1383, 1388 (Wyo.1987). The Parkers have completely failed to show prejudice from the district court's temperate response to the jury's questions. *L.U. Sheep Co.*, 790 P.2d at 672.

We hold the district court did not abuse its discretion by refusing to answer the request from the jury for additional instruction and information. Taken as a whole, the jury instructions adequately informed the jury of the law which was to be applied to the evi-

dence. *Kemper Architects, P.C.*, 843 P.2d at 1182.

**D. PROCEDURAL ISSUES**

■ Finally, the Parkers offer a series of procedural challenges. First, the Parkers contend the district court erred when it permitted the personal representative to sit at the defense counsel table because the real party in interest was Pounder's insurer. This argument is without merit. The personal representative of a deceased is the party authorized by law to defend an action against the estate. Wyo.Stat. § 2–7–104 (1980). *See also*, Wyo.R.Prof.Cond. 1.7 (noting that counsel may be paid by a third party without creating a conflict of interest if the client is informed and consents to the arrangement).

Next, the Parkers contend that the district court improperly ordered their counsel to refrain from any "unit of time" argument. During rebuttal, the Parkers' counsel referred to Mrs. Parker's anticipated life span and calculated damages: "that's 31 years at a thousand dollars a year * * *." The personal representative objected and the district court ordered counsel for the Parkers to refrain from unit of time arguments. The Parkers contend that this court should eliminate restraints on this type of argument. We disagree.

■ Unit of time arguments assume an arbitrary figure for pain and suffering and multiply that figure by some unit of time over which it is assumed the injured person will suffer. *Combined Ins. Co. of America v. Sinclair*, 584 P.2d 1034, 1050 (Wyo.1978). In *Henman v. Klinger*, 409 P.2d 631, 632–34 (Wyo.1966), we carefully considered the propriety of unit of time arguments. We concluded that arguments based on a unit of time mislead the jury and "clothe with an aura of reasonableness the often fantastic claims" made on behalf of such calculations. *Id.* at 634. As a result, Wyoming has prohibited unit of time arguments. We see no reason to reverse that position. Furthermore, the Parkers have failed to make a showing of prejudice from the district court's ruling.

Finally, the Parkers contend that a procedural error occurred when the personal representative was allowed to deposit the judgment amount with the district court. We do not find an abuse of discretion in the procedure used by the district court.

On August 30, 1993, the district court entered a judgment in favor of the Parkers. Statutory interest on the judgment amount began to accrue as of that date. Wyo.Stat. § 1–16–102(a) (Cum.Supp.1994). However, on August 31, 1993, the Parkers challenged the judgment by filing a motion for a new trial. Two days later, the personal representative filed a motion for leave to deposit the judgment amount with the district court. The personal representative stated that the Parkers' counsel had refused to accept payment of the judgment amount pending the disposition of post-trial motions and a possible appeal. On September 7, 1993, the district court permitted the personal representative to deposit the judgment amount with the district court.

The Parkers protest that the personal representative's deposit of the judgment amount with the district court should not toll the accrual of statutory interest. The Parkers also maintain it is unfair that they bear the tax consequences of any interest earned on the judgment amount. These arguments are based upon mistaken assumptions.

In Wyoming, statutory interest begins to accrue when a judgment is entered. *See Gose v. Hess,* 822 P.2d 846, 849 (Wyo.1991). Wyo.Stat. § 1–16–102(a) directs, in pertinent part:

[A]ll decrees and judgments for the payment of money shall bear interest at ten percent (10%) per year from the date of rendition until paid.

Our Rules of Civil Procedure permit the deposit of a sum of money to satisfy a judgment with the court:

In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum or thing. Money paid into court under this rule shall be held by the clerk of the court subject to withdrawal in whole or in part at any time thereafter upon order of the court or written stipulation of the parties. The fund shall be deposited in an interest-bearing account or invested in an interest-bearing instrument approved by the court.

W.R.C.P. 67. The purpose of W.R.C.P. 67 is to relieve the depositor of the responsibility for the funds and, in some circumstances, to stop the accrual of interest by authorizing a payment into the court. 12 Charles A. Wright & Arthur R. Miller, *Federal Practice And Procedure: Civil* § 2991 at 50–51 (1973).

Statutory interest under Wyo.Stat. § 1–16–102(a) accrues from the time of the entry of the judgment "until paid." The Parkers argue for a construction of this language that requires payment to the prevailing party to toll the accrual of interest. However, this construction exceeds the requirements of the statutory language and would create the inequitable result which W.R.C.P. 67 is designed to prevent.

The phrase "until paid" as used in Wyo.Stat. § 1–16–102(a) is not defined. Therefore, this court inquires into the ordinary and obvious meaning of the statutory language to determine the legislative intent. *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1042 (Wyo.1993).

"Until" is a word of limitation which is used to fix a point in time or establish a point at which a precedent status ceases to exist upon the happening of a condition. *Jones v. Jones,* 402 P.2d 272, 274 (Okla.1965); Black's Law Dictionary 1540 (6th ed. 1990). "Paid" is the past participle of "pay." The plain meaning of "pay" includes the discharge of a debt by a tender of payment due. Black's Law Dictionary 1128 (6th ed. 1990). "Tender" is an unconditional offer to perform coupled with the ability to carry out the offer and the production of the subject matter of the tender. Black's Law Dictionary 1467 (6th ed. 1990). *See Radalj v. Union Savings*

& *Loan Ass'n*, 59 Wyo. 140, 184, 138 P.2d 984, 999 (1943). The plain language of Wyo. Stat. § 1–16–102(a) does not require the payment of a judgment amount to be made and accepted by the prevailing party to toll the accrual of statutory interest. When the legislature omits language from a statute, we must consider the omission intentional. *Carroll By and Through Miller v. Wyoming Production Credit Ass'n*, 755 P.2d 869, 873 (Wyo.1988).

■ The personal representative made a payment into the district court of the judgment amount as authorized by W.R.C.P. 67. At that time, the personal representative surrendered control of the funds to the court. Therefore, the personal representative caused the precedent status, the accrual of statutory interest, to cease to exist and "paid" the judgment amount by tendering the payment of the sum necessary to discharge a debt. Wyo.Stat. § 1–16–102(a); W.R.C.P. 67.

The procedure stated in W.R.C.P. 67 prevents the inequity that would otherwise result from circumstances where the prevailing party appeals a judgment or refuses to accept a judgment amount. The Parkers prevailed and were awarded a significant judgment amount which they refused to accept. Instead, the Parkers chose to file a motion for a new trial and, subsequently, to appeal to this court. If statutory interest had continued to accrue during this time, the personal representative would have been unfairly burdened. W.R.C.P. 67 provides the means to pay the judgment amount into the district court and toll the accrual of statutory interest. Wyo.Stat. § 1–16–102(a). The procedure in W.R.C.P. 67 assured the Parkers that interest income would continue to accrue based upon the investment instrument that was selected.

While this court has not previously addressed the intent of W.R.C.P. 67, the federal courts have recognized that a payment into the court under the substantially similar provisions of F.R.C.P. 67 tolls the accrual of interest or penalties. In *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 94 (2nd Cir.1972), the court recognized that payment of a judgment amount into the court during the pendency of an appeal would toll the accrual of statutory interest. In *Mateo v. M/S KISO*, 805 F.Supp. 761, 784 (N.D.Cal. 1991), the court permitted a ship owner to deposit into the court an amount equal to the plaintiff's wage claim. The deposit tolled the penalty provisions of a federal law dealing with unpaid wages.

■ The Parkers also assert that they should not have to assume any income tax liability for the interest accrued while the judgment amount remains on deposit with the court. This argument is without merit. The party ultimately entitled to the judgment amount is also entitled to the accrued interest. *Hansen v. Smith*, 395 P.2d 944, 946 (Wyo.1964). Equity favors assigning the burden for any income taxes to the party who will enjoy the benefit.

■ We hold the district court did not abuse its discretion in granting leave for the personal representative to make a payment into the court of the judgment amount. W.R.C.P. 67.

## IV. CONCLUSION

The issues at trial were carefully focused. Liability was admitted and the jury was being asked to determine the amount of damages which would compensate the Parkers for their injuries. This inquiry required the jury to consider only relevant facts. Irrelevant evidence, such as Pounder's level of intoxication, or the existence of insurance coverage, would have potentially prejudiced the jury's findings. The trial process is controlled by rules of evidence and procedure to assure justice for all parties.

Affirmed.

CARDINE, Justice, Retired, specially concurring.

I specially concur in the opinion of the court only to add to and clarify two issues in the case.

First, with respect to the unit of time argument, the prohibition against this argument, as stated by the court, is that plaintiff may not "assume an arbitrary figure for pain and suffering and multiply that figure

against some unit of time * * *." But that is precisely what plaintiff has done in the prayer of his complaint when he asks for, say, $200,000—or any other figure—for pain and suffering. It is an arbitrary figure. Plaintiff has always been entitled to inform the jury of the amount he is asking for in the prayer of his complaint. The jury should be first informed of this amount on voir dire for there may be jurors who, because of personal makeup, bias or prejudice, would not return a large verdict, or any verdict, no matter what the evidence. The jury is informed of the amount of the prayer on voir dire, in opening statement, in instructions to the jury and in argument. If it were otherwise, how would the jury know the amount of the verdict they could return if they found for plaintiff?

It is helpful that we now state clearly what is permitted and proper in final argument in a case. Assuming plaintiff seeks to recover $200,000 for pain and suffering, there will be proof that plaintiff has a life expectancy of 25 years and that plaintiff will endure pain and suffering for the rest of his life. The prayer of plaintiff's complaint is for $200,000. An argument based upon evidence and the prayer of the complaint would permit the jury to be informed that plaintiff will be in pain and will suffer for 25 years and that plaintiff is asking the jury to award $200,000. That argument might be as follows:

> Plaintiff will endure pain and suffering each year for 25 separate years. How much should plaintiff be awarded for each year is for you to decide. No witness has testified to the amount you should award. I suggest to you that $200,000, the amount prayed for, for 25 years of pain and suffering is fair. Perhaps that is not enough, but that is for you to decide.

Surely a party can also say to the jury that $200,000 for 25 years is $8,000 per year. That is a simple mathematical calculation that is proper whether the argument relates to damages or anything else. But if the court says it is improper, I suggest that the party arguing might state to the jury:

> I am not permitted by the court to divide 25 years into $200,000 to ascertain the amount of damages that would be awarded

for each year of plaintiff's life—so you, the jury, make the calculation.

A party, plaintiff or defendant, can argue what amount the jury should award. If deemed necessary, an expert witness can testify that there are 12 months in a year, 52 weeks in a year. Since plaintiff can inform the jury of the amount sought to be recovered for pain and suffering and the years of life expectancy, it is absurd to hold that neither party can tell the jury how much in money that is per year, month or week.

The objection to the unit of time argument has always been to blackboarding the figures and to breaking the years of life expectancy into minutes and seconds. I would limit the objection, if at all, only to blackboarding and breaking the time into minutes and seconds, although that restriction makes little sense from a practical standpoint.

With respect to punitive damages, I would hold that the primary purpose of punitive damages is to punish the tortfeasor; a secondary purpose is to deter the tortfeasor and others who might be inclined toward the same type of activity. An award of punitive damages in this case would neither punish nor deter the deceased tortfeasor. Its deterrent effect to others, certainly a consideration, is not in and of itself sufficient to justify sustaining an award of punitive damages.