[Civil No. 1709.   Filed December 23, 1919.]

[185 Pac. 646.]

## GEORGE E. SHUTE and ELLA SHUTE, Appellants, v. FIDELITY SAVINGS AND LOAN ASSOCIATION, a Corporation, and TITLE GUARANTEE AND TRUST COMPANY, a Corporation, Appellees.

1. APPEAL AND ERROR—ADMISSION OF EVIDENCE HARMLESS.—Admission of hearsay evidence of the state of an account was harmless; a book of account showing it being also in evidence.

2. BUILDING AND LOAN ASSOCIATIONS—CONTRACT CONTROLLED BY LAW OF STATE OF PAYMENT.—It not appearing that a studied effort to evade the local usury law was intended, a note to a building and loan association of another state, and payable in that state, is controlled by its law.

3. BUILDING AND LOAN ASSOCIATIONS—CONTRACT NEGOTIATED BEFORE PASSAGE OF USURY LAW NOT AFFECTED THEREBY.—The building and loan contract as to terms and conditions of loan antedating the usury law, though formally executed after its passage, is not affected thereby.

APPEAL from a judgment of the Superior Court of the County of Gila.   A. G. McAlister, Judge.   Remanded with directions.

Mr. Jay Good, for Appellants.

---

2. Usury laws governing building and loan contracts, notes, 46 Am. St. Rep. 200; 1 Ann. Cas. 241; 14 Ann. Cas. 736.

2. Whether and when contracts of building and loan associations are usurious, note, 83 Am. Dec. 612.

Mr. George R. Hill, for Appellees.

ROSS, J.—This suit grows out of what is known as a building and loan contract. Negotiations begun on February 16, 1909, culminated on February 28th, in appellant George E. Shute becoming a member of the appellee association and a subscriber to 120 shares of its stock, par value $100 per share, upon which he agreed to pay $48 per month for 130 months, "or until the stock subscribed shall have become fully paid up and matured." At the same time he applied for a loan of $6,000, offering as security his 120 shares of stock and a business lot situate in the city of Globe, Arizona. The note and trust deed that appellant George E. Shute and his wife, Ella Shute, signed was dated February 23, 1909, but as a matter of fact was not executed and delivered to appellee until March 20, 1909. The note is in words and figures as follows:

"$6,000.    Globe, Arizona, February 23, 1909.

"Ten years after date, for value received, I promise to pay to the Fidelity Savings & Loan Association, a corporation, or order, at its office, at Los Angeles, state of California, the sum of six thousand dollars, with interest from date until paid, at six per cent per annum, payable monthly in advance; also the further sum of thirty-six dollars per month, as premium or preference to obtain this loan, said premium payable monthly in advance.

"GEORGE E. SHUTE.
"ELLA SHUTE."

The trustee in the trust deed is the appellee Title Guaranty & Trust Company, and is not otherwise interested than as naked trustee. The property conveyed in trust was the 120 shares of stock and city lot. The trust deed recites, among other things, that it is given "for the purpose of securing the payment of said promissory note . . . with interest and pre-

miums thereon at the rate provided in the original note. . . . '' It is provided in the trust deed that in case default be made in payments as therein or as in note stipulated, the whole indebtedness shall, at the option of appellee, become immediately due and payable, and if proceedings to enforce collection are resorted to, the withdrawal value of the stock, computed according to the by-laws of the appellee, shall be applied to the payment of loans, and the real estate shall be subject to sale for any balance due.  The appellants paid the interest and premiums as provided in note and trust deed, and made payments on stock as agreed up to and including December, 1914.  Appellee exercised its option and declared the whole debt due and payable, on account of defaults, in June, 1915.  The theory of debits and credits is set out in the complaint as follows:

Date 6/7/1915.

George E. Shute and Ella Shute to Fidelity Savings & Loan Association, Dr.

Charges.

| | | |
|---|---|---|
| Principal ............................ | $6,000 | 00 |
| Payments Jan. 1909, to June, 1915, as per agreement ........................... | 2,052 | 00 |
| Fines ........................... | 155 | 00 |
| | $8,207 | 60 |

Credits.

| | | |
|---|---|---|
| Withdrawal value of certificate No. 3027... | $4,588 | 30 |
| To balance ........................... | 3,619 | 30 |
| | $8,207 | 60 |

Appellants in their answer allege that the interest at six per centum per annum had been paid on note until January, 1915, and that $2,088 had been paid up to that time in premiums, and claim that the premium payments should be applied on the principal of note.  Otherwise the two items of interest and

premiums would make the debt an usurious one. Judgment was entered in favor of appellee for $3,463.70 as balance of principal, interest, premiums, and dues, and for $346, attorney's fees. The claim for fines was denied.

Before taking up the assignments of error, we think it is apparent that appellee is claiming, as shown by its statement of account, more than it is entitled to recover. It is unquestioned that appellants had paid interest, premiums, and dues on stock up to and including December, 1914. At that time, then, they owed, accepting appellee's claim of credits, the principal of $6,000 and future interest and premiums and dues until the maturity of the stock. However, in June, 1915, six months from December, 1914, appellee, because of defaults in payments, exercised its option and declared the whole indebtedness due and payable. The payments in default at that time were $36 interest, $36 premium, and $48 dues, per month for six months, January to June, inclusive, or $720. Appellee's statement charges this item as $2,052, or an excess of $1,332. This error of calculation was carried through into the judgment. At all events, therefore, the judgment should be reduced by deducting therefrom the overcharge of $1,332.

Appellants, by their assignments of error, raise two points. The first is directed at the character of the evidence introduced to show the state of the account. The secretary of appellee, testifying by deposition, stated that the account, as contained in complaint, was "figured by one of the employees of plaintiff and approved by deponent, and such amount was due plaintiff. . . . The remainder of the $6,000 loan, plus the payments unpaid to June, 1915, inclusive of fines, as already stated, less the withdrawal value of certificate No. 3072, leaves $3,619.30

as the balance due plaintiff on the seventh day of June, 1915.'' The objection to this evidence is that the witness was not testifying from his own knowledge, but from data furnished by another. We think the evidence might well have been harmful had the testimony of witness been the only means before the court to verify the account. The fact is, though, the appellants' pass-book was in evidence, showing all payments, credits and debits, and from it the state of the account could have been determined. The objection to this testimony was not that a wrong system of debits and credits was used in keeping accounts, or that the figures given were in fact erroneous as to ''payments unpaid,'' or balance due. The hearsay character of the testimony against which the objection was directed could not have injured the appellants for the reason that the pass-book, a book of original entries, was in evidence. The error was in the inaccuracy of calculation and that, although not pointed out, we have noticed.

The next and only other error assigned is that the debt is usurious. It is contended that the premiums should be figured as interest, and that when that is done the interest charged exceeds the legal rate of 12 per cent per annum as fixed by chapter 84, Laws of 1909, effective March 18, 1909. But the note and trust deed, and all payments thereon, were made payable at Los Angeles, California. That being the agreement, the usury laws of California would control, unless it appear that a studied effort to evade the effect of our usury law was intended. *Bedford* v. *Eastern Bldg. & Loan Assn.,* 181 U. S. 227, 45 L. Ed. 834, 21 Sup. Ct. Rep. 597 (see also, Rose's U. S. Notes) ; *United States Sav. & Loan Co.* v. *Beckly,* 137 Ala. 119, 97 Am. St. Rep. 19, 62 L. R. A. 33, and note, 33 South. 934. There is nothing in the record to indicate that the usury laws of Arizona were taken

into consideration one way or the other. There was no usury law in Arizona on February 16, 1909, the date negotiations were begun between these parties, looking to the loan, which was in fact agreed to February 23, 1909, the date of note and trust deed. The date that these instruments bear is the date upon which they were formally drawn, but they were not executed and delivered to appellee until March 20, 1909, just two days after chapter 84, *supra,* went into effect. The contract between the parties as to terms and conditions of loan antedates the 1909 usury law several days, and the formal part of execution only thereafter took place. The transaction was so completed as not to be affected by the usury law invoked. *Bedford* v. *Eastern Bldg. & Loan Assn., supra.* In discussing this assignment, we have treated the premium as interest, but there are divergent views on the point (9 C. J. 965, § 94), and because of the state of the record we do not take sides. The fact is, the appellants received for their stock considerably more than they paid therefor. They had made fifty-eight payments of $48 each, or $2,786, and were given credit for $4,588.30 as its withdrawal value. This value was agreed to at the trial. This increased value of their stock doubtless was due largely, or to some extent, to the payment of premiums, interest, and fines by other members of the association, and, having accepted such benefits as shareholders, it would be inequitable to permit them to claim and have the premiums they paid applied as interest upon the original loan. 9 C. J. 972, § 101.

The courts have come to different conclusions as to how these building and loan contracts should be construed. By some they are treated as straight loans, and all payments, whether interest, premiums or dues, are credited upon the original amount bor-

rowed. Other courts proceed upon the idea that the investment feature is independent of the borrowing feature of the contract. By these decisions the dual capacity of borrower and investor is preserved, and some of the decisions are influenced by statutory provisions defining the powers and liabilities of building and loan companies. We have no such statute, and therefore, when a case arises that presents the variant views, will be free to follow the one that appears most in harmony with law and justice. This is not such a case because of the narrow compass of errors assigned.

Building and loan contracts as construed by the courts are discussed in an extensive and learned note to *Groover* v. *Pacific Coast Sav. Co. et al.,* 164 Cal. 67, Ann. Cas. 1914B, 1261, 43 L. R. A. (N. S.) 874, 127 Pac. 495.

The cause is remanded, with directions to the trial court to modify the judgment by allowing a credit thereon of $1,332. The appellants will recover the costs of this court, and the appellee the costs of the trial court.

CUNNINGHAM, C. J., and BAKER, J., concur.