470 P.2d 713

E. R. "Chuck" WESCOTT and Betty Lou Wescott, his wife, dba Canyon Mobile Homes, Appellants,

v.

Patrick B. GLOWENSKI and Shirley M. Glowenski, his wife, Appellees.

No. 1 CA–CIV 988.

Court of Appeals of Arizona, Division 1, Department B.

June 18, 1970.

Carpenter & Kiefer, by Wayne A. Carpenter, Phoenix, for appellants.

Donald D. Meyers, Phoenix, for appellees.

JACOBSON, Judge.

The only issues presented in this appeal are the admissibility of certain evidence and whether there is sufficient evidence to support the trial court's judgment.

Plaintiffs-appellees, PATRICK B. GLOWENSKI and SHIRLEY M. GLOWENSKI, his wife, brought an action against defendants-appellants, E. R. "CHUCK" WESCOTT and BETTY LOU WESCOTT, his wife, dba CANYON MOBILE HOMES for rescission of a conditional sales contract for a Vagabond mobile home purchased by plaintiffs from defendants. The trial court, sitting without a jury, entered judgment in favor of plaintiffs, rescinding the conditional sales contract and ordering defendants to pay plaintiffs certain sums of money paid under the contract as restitution.

The facts show that in June, 1965, plaintiff examined two Vagabond mobile homes on defendants' mobile home lot located in Phoenix, Arizona. The two mobile homes were later identified as bearing serial numbers GSK 832 and GSK 842. The "GSK" designation means the mobile home was manufactured in Arizona. Testimony also

established that the only place in Arizona where Vagabond trailers were manufactured was in Kingman, Arizona. Plaintiffs later returned to defendants' lot and on June 22, 1965, signed a sales order for Vagabond mobile home serial number GSK 832, and delivered to defendants their deposit check in the sum of $300.00. Defendants represented to plaintiffs that this mobile home was a new 1965 model. This particular mobile home is 20 feet wide and comes in two separate ten-foot wide units which are joined together when placed on a purchaser's lot. At the time the mobile home was inspected by plaintiffs in June, 1965, it was still in two separate, unjoined units.

On October 5, 1965, a conditional sales contract was entered into between the parties which described the mobile home purchase as a new 1965 Vagabond housetrailer. Plaintiffs at this time paid defendants an additional $1200.00. In addition to the cash down payment plaintiff traded in a 1963 Artcraft Mobile Home owned by them for which defendants allowed them a credit of $1700.00. Defendants agreed to pay off the then owed balance due on the Artcraft trailer in the approximate sum of $3,200.00.

Because of difficulties in obtaining a lot for the new trailer, moving their furnishings from the old Artcraft trailer and getting the new trailer set up, plaintiffs did not actually move into the Vagabond trailer until October 23, 1965. Almost immediately, difficulties arose concerning alleged defects in the new trailer, including the discovery on November 11, 1965, that the trailer plaintiffs purchased might be a 1964 model, rather than a 1965 model. These difficulties culminated on December 19, 1965, in plaintiffs' attorney writing defendants and advising them that plaintiffs demanded the rescission of the conditional sales contract and restitution of all moneys paid and return of the traded-in mobile home. Plaintiffs paid no monthly payments under the conditional sales contract nor did defendants pay the unpaid balance on the Artcraft trailer used as a trade-in.

At time of trial, plaintiff presented testimony and evidence that no 1965 Vagabond trailers were manufactured in Arizona; that the key to the trailer in question had attached to it a tag, which described the Vagabond Mobile Home purchased by the plaintiff to be a 1964 model; that trailers ordered prior to July, 1964, were 1964 models and that this particular Vagabond mobile home was ordered by defendants in June of 1964; that Vagabond trailer Model GSK 842 was offered for sale in Las Vegas, Nevada, as a 1964 model and was manufactured after the trailer purchased by plaintiff; and that the "blue book" of mobile homes listed no 1965 Vagabond mobile homes being manufactured in Arizona. On the other hand, the title to this mobile home issued by the Motor Vehicle Division of the Arizona State Highway Department showed the model year to be 1965.

Defendants, on appeal, question the admissibility of the key tag, the admission of testimony by plaintiffs as to two letters received from the manufacturer of the Vagabond trailer concerning the date of manufacture of the trailer in question and the admissibility of testimony of one of the plaintiffs concerning the model year of Vagabond trailer, serial number 842. Defendants further question whether the evidence supports the trial court's apparent conclusion that plaintiffs proved that the mobile home in issue was in fact a 1964 model rather than a 1965 model. Defendants do not raise any question as to whether or not the alleged misrepresentation, if actually made and proved, would provide a legally sufficient basis to invoke the remedy of rescission.

Defendants assert that the key tag should not have been introduced into evidence for two reasons: (1) the tag was not properly authenticated, and (2) it was hearsay evidence.

The evidence shows that defendants admitted that when keys are obtained for mobile homes on their lots, a tag is filled out with the serial number and the trailer year, that this information is placed on the tag

either by the defendants or one of the salesmen in their employ and that the tag in question is similar to those used by defendants in their business. Plaintiffs testified that they received the key and tag in question from defendants, that the key and tag were in their possession at all times after delivery from the defendants, that they did not add to or alter the tag in any manner and that on November 11, 1965, they first discovered that the tag identified the trailer purchased by them as a 1964 model. With this foundational background, plaintiff offered the key tag in evidence. At the time of the offer, defendants' counsel made the following objection:

"I see. Your Honor, I would renew my objection that there is no showing that the tag was placed by my client, no showing that the tag was in her possession all the time. The information on the key could have—

"We submit to the weight of the evidence rather than to the admissibility."

█ As will be noted the only objection to the admissibility of the key tag was a foundational one. While counsel's remarks might be interpreted as meaning he waived this objection, we hold that sufficient foundational evidence was received showing defendants' connection with the key tag to allow its introduction.

█ Defendants contend on appeal that the exhibit was also inadmissible as hearsay evidence. This ground for objection to the exhibit's admissibility not having been urged in the trial court, will not be considered on appeal. Goodman v. Carson, 84 Ariz. 177, 325 P.2d 819 (1958).

Defendants' second contention is that plaintiffs were allowed to testify from two letters received from the manufacturer of the mobile home involved without these letters being introduced in evidence and that they were incapable of being so introduced because of a lack of authentication. Counsel for plaintiff readily admitted the inadmissibility of these exhibits. However, the letters were not admitted into evidence, and contrary to defendants' contention that these letters were read into evidence the testimony shows the following took place:

"Q BY MR. MEYERS: When you opened the envelope and removed the exhibit 15 for identification and read it, was it responsive to the inquiry you had made to Guerdon Industries?

"A BY THE WITNESS: Yes.

"Q Did you learn thereafter that the original of this had gone to your attorneys?

"A Yes.

"Q And did you then see the original and compare it with the copy of the letter you had received?

"A Yes.

"Q And were they identical in all respects?

"A Yes.

"Q Now during the month of November after seeing this key tag and talking to the Arizona Bank, did you arrive at an opinion that this mobile home unit purchased was not a 1965?

"A Yes.

"Q And was that one of your reasons for writing to the Guerdon Industries?

"A Yes.

"Q And when you received this response back, did that confirm what your opinion was at that time?

"A Yes.

"MR. CARPENTER: Objection, Your Honor.

"MR. MEYERS: At this time, I would offer this in evidence.

"MR. CARPENTER: I renew my objection. There is no indication on the exhibit whatsoever—it's clearly required that the signature either be identified by the person who put it on the paper or that some person familiar with the handwriting of that particular person who signed that particular document identify the signature.

"MR. MEYERS: I think the objection is valid."

As to Exhibit 17, the following took place:

"Q And did you get a response back from the Mobile Homes Manufacturers Association in response to your inquiry as to when they had in fact licensed 842?

"A Yes.

"Q And did that further confirm your view that—

"MR. CARPENTER: Objection, Your Honor. Again I'm going to renew my objection that this exhibit—on the same basis.

"MR. MEYERS: I haven't offered it yet.

"MR. CARPENTER: Well, I object to his testifying as to what the letter contained.

"MR. MEYERS: To anticipate the entire balance of my case, you object to it. Let me lay a foundation.

"Q BY MR. MEYERS: When you got the letter back, did it further confirm your view that this trailer was a 1964 model?

"A BY THE WITNESS: Yes."

The objection to both these exhibits was basically one of authentication. However, the proper objection to the last question asked in both instances is that the opinion of the witness was based on facts not in evidence, *see,* Stanberry v. Stanberry, 81 Ariz. 215, 303 P.2d 706 (1956), or was opinion testimony. *See* Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, 65 P.2d 35 (1937). We do not condone the use of written exhibits in trial where their inadmissibility is obviously apparent and no attempt is made to lay the necessary foundation to make them admissible. However, in view of the rather unimportant character of the type of response elicited from the witness, that is, his opinion, and in view of the fact that these letters were not introduced into evidence and this was a trial to the court without a jury, we are constrained to hold that the allowance of the witness to give his opinion based upon the inadmissible letters, if error, was harmless. Cf. Albert Steinfeld & Co. v. Wing Wong, 14 Ariz. 336, 128 P. 354 (1912).

Defendants also object on appeal to the allowance of testimony by Mrs. Glowenski that she was told by a salesman of Canyon Mobile Homes in Las Vegas, Nevada, that a Vagabond mobile home Serial No. 842 was a 1964 model. It had previously been established that the mobile home purchased by plaintiff, bearing Serial No. 832, was manufactured prior to Model #842. Defendants aptly state in their briefs that "[t]he court erred in permitting this testimony to stand over the objections of the defendant." However, we have reviewed carefully this portion of the transcript and find defendants in fact made no objections to the admissibility of this testimony or moved to have it stricken. Defendants, having failed to object to the receiving of this testimony, waived any error in admission. Tang v. Avitable, 76 Ariz. 346, 264 P.2d 835 (1953). Evidence which may be hearsay, if received without objection, is sufficient to establish a fact and may be given the value of direct and competent evidence. Velasco v. Mallory, 5 Ariz.App. 406, 427 P.2d 540 (1967).

As to the defendants' last contention concerning the sufficiency of the evidence, we have reviewed the record and hold there was sufficient competent evidence before the trial court to support its conclusion that the mobile home purchased by plaintiff was in fact a 1964 model rather than a 1965 model as represented. As previously pointed out, we are not called upon to determine whether this conclusion would support an action of rescission of the conditional sales contract.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.