724 P.2d 1206

Dennis R. STARKINS,
Plaintiff-Appellee,

v.

Jerry BATEMAN, Jane Doe Bateman,
Henry Alcott and Jane Doe Alcott, and
the City of Phoenix, a municipal corpo-
ration, Defendants-Appellants.

No. 1 CA–CIV 7531.

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 23, 1986.

Reconsideration Denied March 31, 1986.

Review Denied Sept. 9, 1986.

538

Jones, Skelton & Hochuli by Edward G. Hochuli, Michael W. Foster, Mark D. Zukowski, Phoenix, for defendants-appellants.

Marton & Hall, P.A. by Kraig J. Marton, Phoenix, for plaintiff-appellee.

## OPINION

KLEINSCHMIDT, Judge.

This is an appeal from a judgment for the plaintiff in a defamation action. As required by *Bose Corp. v. Consumers Union of United States*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), we must examine the entire record and make an independent decision as to whether there is clear and convincing evidence to support a finding of malice. The case also presents questions about evidentiary rulings, jury instructions, misconduct of counsel, excessiveness of the verdict, and the trial court's denial of a judgment notwithstanding the verdict. A decision on this last issue is, of course, intertwined with the duty prescribed by *Bose*.

Dennis R. Starkins, who was a Captain in the Phoenix Fire Department, brought this defamation action against Jerry Bateman, Henry Alcott, and Michael Soock, who were his subordinates in the fire department. The defendants had reported to their superiors and repeated to others that Starkins was stealing city gasoline for his personal use from a pump at the fire station where he worked. These charges formed the primary basis for the termination of Starkins' employment with the fire department. The City of Phoenix was also named as a de-fendant because the defamatory remarks were made by the individual defendants in the course and scope of their employment. No question is raised on appeal as to the propriety of holding the city to answer. Michael Soock was dismissed from the lawsuit prior to trial and is not a party to this appeal. Starkins sought damages for the loss of his job, emotional suffering, the destruction of his marriage, and harm to his reputation.

The jury returned a verdict in favor of Starkins and against Bateman and the City of Phoenix in the amount of $450,000 and against Alcott and the City of Phoenix in the amount of $450,000. The jury also assessed punitive damages against Bateman in the amount of $20,000 and Alcott in the amount of $10,000. The defendants filed a motion for judgment n.o.v. or in the alternative for a new trial. They also filed a motion for a remittitur. The court denied the motion for judgment n.o.v. or new trial and granted the motion for remittitur only as to punitive damages. The court reduced punitive damages to $4,000 against Bateman and to $2,000 against Alcott. The defendants have filed a timely notice of appeal.

An overview of the evidence is of assistance in understanding the issues. Captain Starkins and Fire Fighter Bateman were assigned to the same shift at Fire Station 33. Over a period of time they developed a bitter antipathy for each other. On December 17, 1979, following a disagreement that arose out of Bateman's conduct on an emergency call the two men argued, and Starkins said to Bateman "You are out." Based upon prior discussions between the two, this statement was understood to mean that Bateman would have to transfer from Station 33. Soon thereafter Bateman told another fire fighter, defendant Henry Alcott, that Starkins was stealing gasoline and that he, Bateman, thought somebody else should know about it.

According to Bateman, he first saw Starkins steal gas in October or November of 1979. Then, on December 11, 1979, he saw Starkins near his van with the nozzle to the

fire station's gas pump in his hand. Later the same day Starkins confided to Bateman that he had taken some gas and he told Bateman to charge the gas in the gas log to a city vehicle. Bateman said that again, on December 20, Starkins told him that he was going to take some gas. It was then that Bateman told Alcott and another fire fighter, Mike Soock, that Starkins was stealing gas from the city.

Bateman, Alcott and Soock decided to keep a watch on Starkins and, according to Bateman, after they all returned from an emergency call on the evening of December 23, Starkins stole some more gas. On that occasion Starkins' vehicle had been parked near the gas pump, and when Bateman checked the meter on the pump, he determined that 18 gallons were missing. He checked the gasoline log and found that a false entry had been made in the log to cover the missing amount. Shortly afterwards he reported these alleged thefts to the other captain assigned to Station 33.

Henry Alcott testified that Bateman first told him on December 20, 1979, that Starkins was taking gasoline. He said that he saw Starkins' van parked near the pump on that day, that the gas tank cap was off, and the van's fuel gauge was on empty, leading him to conclude that Starkins was intending to take some gas. On December 23, he kept tabs on the gas meter and corroborated Bateman's version that there was an 18 gallon discrepancy after Starkins moved his van away from the pump.

The third accuser, Michael Soock, said that on December 20, he looked out the window of the station and saw Starkins standing near his van with the nozzle to the gas pump in his hand. He also corroborated that the pump reading showed an 18 gallon discrepancy on December 23.

For his part, Starkins flatly denied ever stealing any gasoline or admitting as much to Bateman or anyone else. While his honesty was impugned by evidence that he had once stolen the answers to the battalion chief's examination and that he had indicated on a promotion application that he had a master's degree when in fact the degree had not been awarded, a number of witnesses testified that they considered him to be honest.

## DENIAL OF MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

■ The defendants argue that Starkins produced no evidence to support the elements of actual malice, that is, that he had produced no evidence that defendants knew their accusations were false or that they acted in reckless disregard of the truth. Normally, in determining whether the trial court should have directed a verdict, this court must view the evidence and inferences therefrom in a light most favorable to the party opposing the motion. *Rocky Mountain Fire and Cas. Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 292, 640 P.2d 851, 854 (1982); *Bailey v. Montgomery Ward & Co.*, 6 Ariz.App. 213, 217–18, 431 P.2d 108, 112–13 (1967). Putting aside the standard of review dictated by *Bose* for the moment, we find the evidence more than sufficient to create jury issues concerning whether Bateman and Alcott acted with actual malice.

The evidence with respect to Bateman's acting with malice included the following: Dennis Starkins testified that Bateman deliberately lied by stating that Starkins had stolen gasoline and had asked Bateman to alter the gas records to conceal the stealing; Starkins testified that Bateman deliberately lied by suggesting to others that Starkins had confided in Bateman on a number of occasions about prior incidents of stealing gasoline; Bateman repeated statements that Starkins was stealing gasoline not merely to his superiors but also to his "close friends"; there was a long history of ill will between Bateman and Starkins; Starkins introduced evidence tending to show that Bateman pumped gas through the meter of the gas tank back into an underground tank to deliberately frame Starkins; in spite of testimony that vehicles other than Starkins' van could have removed gasoline from a tank on the evening in question, Bateman nevertheless told his superiors that it was "totally im-

possible" because of the position of Starkins' van for any other vehicle to have obtained fuel at that time; Bateman failed to "dip the tank" on the evening in question to determine whether in fact any gasoline had been taken out of the underground tank; and Bateman was aware that there was a long history of poor record keeping with respect to fire department gasoline and that fire department personnel often "juggled the books" to make them balance. Both Bateman and Alcott gave inconsistent statements on different occasions, and their testimony did not always coincide on material points. For example, Bateman could not recall that Starkins had confided to him on December 23 that he was going to steal gas, but he conceded that in earlier statements he had reported such a conversation and had variously said on one occasion that it had occurred after lunch, and on another that it had taken place later in the evening. Bateman had previously given a statement in which he said that he, Alcott, and Soock had all observed a false entry in the gas log on December 23, but at trial he could not say that such was the case. He related in an earlier statement that the other captain assigned to Station 33 first approached him about discrepancies in the gas log. The captain in question contradicted this statement and Bateman, at trial, was not sure which version was correct. He could not remember saying to Chief James A. Walker that "we all steal from the city" although Walker clearly testified that Bateman said this on an occasion when he was remarking to Walker that he hoped that Starkins got what he deserved.

Henry Alcott, in various statements, gave conflicting testimony about when on December 23 he checked the meter on the gas pump. He gave conflicting statements about how long the van was parked by the pump. Evidence was introduced to show that it would have been difficult for Mike Soock to have seen Starkins from the fire house window in a position near the gas pump. Taken together there was sufficient evidence to show that Bateman acted either knowing that his accusation was false or with reckless disregard for the truth.

■ Appellants contend that the only evidence of Alcott having acted in reckless disregard for the truth was that he failed to conduct a full investigation to establish whether Starkins had in fact stolen gasoline. They contend that an investigatory failure alone is insufficient to raise an issue of actual malice. *See Ross v. Gallant, Farrow & Co.*, 27 Ariz.App. 89, 91, 551 P.2d 79, 81 (1976). However, there was evidence of more than Alcott's failure to investigate thoroughly. For example, there was testimony that Alcott was aware of the history of ill will between Bateman and Starkins and that he unreasonably relied upon Bateman's allegations based on slight circumstantial evidence. Additionally, Alcott was aware that on the evening in question someone other than Starkins could have taken gas from the pump. Further, Alcott knew or should have known that because of the bad relations between the two men it was highly unlikely that Starkins had admitted a theft to Bateman as Bateman claimed. Nevertheless, he relied on Bateman and reported to his superiors and others that Starkins had stolen gasoline. Additionally, even after admitting that he had been mistaken about material statements to his superiors, he did not retract those statements. In summary, Alcott made his charges based on an unreliable source where there were obvious reasons why he should not have believed that source. Recklessness may be found where there are obvious reasons to doubt the truthfulness of the informant and the accuracy of his statements. *See St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262, 267–68 (1968). Indeed, given the inconsistencies in the testimony, the evidence as a whole would support the conclusion that Bateman and Alcott conspired to lie about Starkins stealing gasoline for the purpose of causing Starkins to be fired. We find no error in the trial court's refusal to grant judgment notwithstanding the verdict in favor of Bateman and Alcott.

## BOSE REVIEW

We must review the record independently to determine whether there was clear and convincing evidence of malice. This is a duty imposed by *Bose Corp. v. Consumers Union of United States, Inc. Bose* involved an article published in Consumer Reports describing a sound amplifying system manufactured by the Bose Corporation. The article said that the amplifier caused the sound of individual musical instruments to wander "about the room." The author of the article testified that when he listened to the system the sound of instruments heard through the speakers tended to wander "along the wall." Based on this distinction the trial court found that the article contained a false statement of fact and concluded that the plaintiff had sustained its burden of proving that the respondent had published it with malice, that is, with knowledge that it was false or with reckless disregard as to its truth or falsity. The court of appeals reversed, holding that its review of the "actual malice" determination was not limited to the "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a), which provides that findings of fact by the trier of fact shall not be set aside unless clearly erroneous and that due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. The court of appeals, based on its independent review of the record, concluded that the plaintiff had not sustained its burden of proof.

The Supreme Court concluded that Rule 52(a) does not prescribe the standard to be applied in reviewing a determination of actual malice. Because of the overriding importance the First Amendment attaches to free expression, an appellate court must exercise independent judgment to determine if the record establishes actual malice with convincing clarity. Undertaking that task, the Supreme Court concluded:

> Here, however, adoption of the language chosen was 'one of a number of possible rational interpretations' of an event 'that bristled with ambiguities' and descriptive challenges for the writer. *Time, Inc. v.*

*Pape,* [401 U.S. 279, 290, 91 S.Ct. 633, 639, 28 L.Ed.2d 45, 53, *reh. den.* 401 U.S. 1015, 91 S.Ct. 1248, 28 L.Ed.2d 552 (1971)]. The choice of such language, though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella.

*Bose,* 466 U.S. at 512, 104 S.Ct. at 1966, 80 L.Ed.2d at 525.

The proper scope of review expected of appellate courts under *Bose* is currently the subject of hot debate. The United States Court of Appeals for the District of Columbia Circuit gave the matter extensive consideration in *Tavoulareas v. Piro,* 759 F.2d 90, *vacated for rehearing en banc,* 763 F.2d 1472 (D.C.Cir.1985). A final decision in *Tavoulareas* is now pending. While we do not rely on *Tavoulareas* as precedent, there is much in the majority opinion that we find persuasive.

The question that is so perplexing is how an appellate court should treat decisions that rest upon an assessment of the credibility of witnesses, particularly where the versions of what occurred are in direct conflict. Should an appellate court defer to the finder of fact's assessment of the underlying facts, or should it undertake a *de novo* evaluation of the entire case, in the process making its own determination as to who was lying and who was telling the truth?

We believe that in a case of this nature it is our duty to review the entire record and determine whether the ultimate facts clearly support a finding of malice. In doing so we must take into account all of the facts, but where the finder of fact has made a choice between who is lying and who is telling the truth, we must defer to that choice unless such a finding is clearly erroneous. Several things suggest this result. First, the Supreme Court did not, in *Bose,* specifically hold that an appellate court must review each fact necessarily or impliedly found by the trier of fact and decide whether there is clear and convincing evidence to support each fact. It only

clearly held that the import of such facts as found by the trier of fact must support, by clear and convincing evidence, the ultimate fact, that is, the existence of actual malice.

■ Second, the majority opinion in *Bose* said that the proper standard of review must be faithful to *both* Rule 52(a) and to the rule of independent appellate review first applied in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), thus implying that an appellate court need not make an independent decision that the evidence supporting each and every underlying fact is clear and convincing. This analysis applies to Rule 52(a), Arizona Rules of Civil Procedure, which is identical to the federal rule.

Third, the majority in *Bose* noted that it could accept all of the trial court's purely factual findings and nevertheless hold that the record did not contain clear and convincing evidence of malice, again implying that the appellate court need not make an independent decision that the evidence supporting each and every underlying fact is clear and convincing.

■ We are reluctant to interpret *Bose* as requiring us to undertake a *de novo* review of the record to determine whether the *underlying* facts which support the verdict were established by clear and convincing evidence. An appellate court is not equipped to make such a review effectively, and to do so would entirely displace the function of the jury in defamation cases. Instead, we have undertaken a complete and independent review of the trial record to determine whether the ultimate facts are clearly and convincingly sufficient to establish malice. Given the standard we have adopted, the issue is easily resolved in this case. The jury necessarily found that Bateman lied when he said that he saw Starkins at various times with the gas hose in his hands near his van, that Starkins falsified the gas log, and that Starkins admitted that he stole gas. These facts clearly prove malice. It is highly probable that the jury also found that Alcott lied, particularly in describing what he saw on December 20 with respect to Starkins with

the gas nozzle in hand, the gas cap off the van, and the empty tank. Even assuming that the jury only found that Alcott acted with a reckless disregard for the truth, we believe, under all the circumstances, that such finding and conclusion clearly and convincingly constitute malice.

## HEARSAY OBJECTIONS

Starkins called numerous character witnesses. The appellants contend that the trial court erred by permitting these witnesses to testify that (1) Starkins' marriage had been destroyed, that he had suffered emotionally, and that he was unable to obtain employment as a result of the defamation, and that (2) Starkins had told them that he did not steal gasoline. They argue that the testimony was offered and received to prove the truth of the matters asserted and was thus inadmissible hearsay. They further contend that the cumulative effect of this testimony was highly prejudicial.

The appellants cite six specific portions of the trial transcript in which Starkins' character witnesses were asked whether Starkins had told them that he had stolen gas. A review of the record indicates that on four of these occasions, no timely objection was made to the testimony.

The first objection to testimony concerning Starkins' denial of the theft occurred during the testimony of Sandy Starkins, the plaintiff's former wife. Counsel objected when Ms. Starkins was asked, "In all the time since December of 1979, has Dennis ever told you anything which would indicate to you that he stole gas on December of 1979?" The witness had previously been asked, "During the entire time of your marriage, did Dennis say even one word which would lead you to believe he ever took any gas, one ounce of gas from the City of Phoenix?" This was asked and answered negatively without objection.

■ Appellants assert that since the original question to Sandy Starkins was not offered to prove the truth of the matter it was not hearsay. They argue, however,

that when the question was asked the second time, it was clear that counsel was trying to elicit substantive hearsay evidence that the gas stealing allegations were not true. However the record is characterized, if hearsay evidence is admitted without objection it becomes competent evidence admissible for all purposes. *See State v. McGann*, 132 Ariz. 296, 299, 645 P.2d 811, 814 (1982); *Wescott v. Glowenski*, 12 Ariz.App. 393, 397, 470 P.2d 713, 717 (1970). *See generally* Udall & Livermore, *Law of Evidence* (2d ed.) § 12 at 16 (1982). The reception of inadmissible evidence that has at some other point been admitted is harmless error. *See* Rule 61, Arizona Rules of Civil Procedure; *State v. Stone*, 104 Ariz. 339, 343, 452 P.2d 513, 517 (1969). *Inspiration Consol. Copper Co. v. Bryan*, 31 Ariz. 302, 306–07, 252 P. 1012, 1014 (1927); *Shute v. Fidelity Savings & Loan Ass'n*, 21 Ariz. 111, 115, 185 P. 646, 647 (1919).

■ Following Sandy Starkins' testimony, two other witnesses testified without objection that Starkins had never admitted the alleged theft. The appellants contend that having once made an objection, there was no reason for them to continue to object to the same line of questioning in order to preserve the issue for appeal. The record reflects, however, that the original objection was not an indication to the court that there was a continuing objection to a particular line of questioning or that the court accepted it as such. In fact, defense counsel later opened up this area himself on cross-examination of Evan Paoletti, one of Starkins' witnesses. The controlling question is whether the objectionable matter was brought to the attention of the trial court in a manner sufficient to advise the court that the error was not waived. *State v. Briggs*, 112 Ariz. 379, 382, 542 P.2d 804, 807 (1975). The fact that defense counsel wanted to make a continuing objection to a certain class of evidence was not clear until later proceedings in chambers. Having failed to object when the testimony was elicited or having failed to advise the court that the objection was a continuing one, appellants' later objections were untimely.

Thus, they cannot now assert the admission of this testimony as reversible error. *See Maxwell v. Aetna Life Ins. Co.*, 143 Ariz. 205, 214, 693 P.2d 348, 357 (App.1984); *Zakroff v. May*, 8 Ariz.App. 101, 106, 443 P.2d 916, 921 (1968).

The only testimony to which defendants made a timely objection was the testimony of James E. Walker who was asked, "Has he [Starkins] ever told you that he stole the gas?" The court overruled the hearsay objection without explanation. By the time Walker testified, three witnesses had testified without objection that Starkins either never admitted the theft or denied it outright. Following Walker's testimony, appellants' counsel made a record in chambers objecting to *all* testimony of prior witnesses with respect to what Starkins had told them about the theft. Counsel requested that the testimony be stricken and moved for a mistrial.

Starkins' counsel argued that opposing counsel was making a general objection where individual objections should have been made at the time the testimony was elicited. He further contended that the statements were not hearsay pursuant to Rule 801(d), Arizona Rules of Evidence.

The court denied the motion for mistrial holding that the statements were admissible pursuant to Rule 801(d)(1) and Rule 803(24), Arizona Rules of Evidence. The trial judge informed both counsel, however, that he would probably consider subsequent testimony as to out-of-court statements made by Starkins as hearsay and would rule on them on an objection-by-objection basis. Leaving the question of admissibility aside, we again emphasize that at this point only Walker's testimony had been admitted over a timely objection.

Although the court had informed counsel of the necessity to rule on an objection-by-objection basis, appellants' counsel nevertheless failed to make an objection on a later occasion when similar testimony concerning Starkins' denial of the theft was later introduced. In this context we must

determine whether the admission of Walker's testimony constitutes reversible error.

We agree with appellants that neither Rule 801(d)(1) nor Rule 803(24) of the Arizona Rules of Evidence provides a basis for admitting Starkins' denial of the theft.

Rule 801(d), Arizona Rules of Evidence provides in part:

Statements which are not hearsay. A statement is not hearsay if—

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him; ...

Appellants correctly point out that Starkins' denial of stealing gas is not inconsistent with his trial testimony and thus not admissible under Rule 801(d)(1)(A). Further, even if there had been a charge of recent fabrication or improper motive, the statements to Walker occurred *after* the motive to fabricate arose, that is, after charges of theft were made. To be admissible under Rule 801(d)(1)(B), the statements must have been made *before* the motive to fabricate arose. *See State v. Martin,* 135 Ariz. 552, 554, 663 P.2d 236, 238 (1983).

Likewise, we find no basis for admissibility pursuant to Rule 803(24) which provides:

24. *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that

A. the statement is offered as evidence of material fact;

B. the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

C. the general purposes of these rules and the interest of justice will be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

This exception requires the proponent to make such testimony known to the adverse party in advance of trial. Starkins apparently concedes that no such advance notice was given. Thus, Walker's testimony was not admissible under Rule 803(24). Further, the trustworthiness of an individual's assertions of innocence are highly suspect. *See State v. Spratt,* 126 Ariz. 184, 187, 613 P.2d 848, 851 (App.1980); *State v. Duffy,* 124 Ariz. 267, 275, 603 P.2d 538, 546 (App. 1979).

Nevertheless, we find no reversible error. Assuming Walker's testimony was inadmissible, testimony that Starkins had denied the theft to his friends had been elicited on five other occasions without objection or without timely objection. Similar testimony was elicited without objection *after* Walker testified even though the trial judge had informed counsel that he would rule on such testimony as it arose. If error, we find that the admission of Walker's testimony was harmless. *See Siegrist v. Carrillo,* 112 Ariz. 218, 221–22, 540 P.2d 690, 693–94 (1975); *Snyder v. Beers,* 1 Ariz.App. 497, 501, 405 P.2d 288, 292 (1965).

Appellants also allege error in the introduction of testimony from Starkins' character witnesses to the effect that Starkins' marriage had been destroyed, that his emotional and mental state was in shambles, and that he was unable to obtain employment as a result of the defamation. This objection was not made until the proceedings in chambers we have referred to above. It was not made with respect to

any particular witness' testimony at the time the testimony was elicited. Further, only in their reply brief do the appellants specifically indentify the testimony they contend is hearsay.

 Some of the testimony with respect to Starkins' emotional and mental state and the destruction of his marriage are based on the witnesses' observations of Starkins and his family. Witnesses have a right to testify about their opinions concerning the mental condition of a party. *See generally*, Udall & Livermore, *Law of Evidence*, (2d Ed.) § 21 (1982); *see also* Rules 601 and 701, Arizona Rules of Evidence. When counsel made a general objection in chambers to all testimony from witnesses concerning Starkins' inability to get a job and the breakup of his marriage, it was too late to separate direct observation from alleged hearsay. Under these circumstances the objection was untimely, and even assuming that the testimony was improper, the error was waived.

## JURY INSTRUCTIONS

 Appellants next contend that the trial court erred in failing to give their proposed instructions concerning Starkins' status as a "public official" and defendants' "qualified privilege" to report suspicions of theft to their superiors. They argue that these were separate defense theories and that they were entitled to jury instructions on each.

The parties agree with the trial court's pretrial ruling that Starkins was a public official as a matter of law and that appellants' statements to their superiors gave rise to a qualified privilege. The parties also agree that if the plaintiff in a defamation case is a public official or if defendants in a defamation case have a qualified privilege to make a statement, the test for proving defamation is identical; the plaintiff must establish by clear and convincing evidence that the publication was made with actual malice. *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *See Selby v. Savard*, 134 Ariz. 222, 225, 655 P.2d 342, 345 (1982).

The trial court so instructed the jury. Nevertheless, appellants contend that the trial court's instruction on "actual malice" was insufficient because they were entitled to an instruction telling the jury why actual malice was required both because Starkins was a public official and because they had a qualified privilege to report their suspicions to their superiors. We think it would have been preferable for the trial court to have included instructions along the lines requested by the appellants for the sake of fleshing out the theory of the case but we do not agree that the failure to do so in this case is reversible error.

We find that the cases relied upon by appellants do not support their claim of entitlement to their requested jury instructions. They cite language in *Schafroth v. Baker*, 276 Or. 39, 553 P.2d 1046 (1976) that merely instructing on actual malice is insufficient to call the jury's "attention to the need for some relationship between the defendants' purpose and the purpose of the privilege,...." *Schafroth*, 276 Or. at 46, 553 P.2d at 1049. The holding in that case, however, was that the trial court committed error because malice was improperly defined.

Appellants also contend that *Russell v. Smith*, 434 So.2d 342 (Fla.App.1983), stands for the broad proposition that in a defamation case a jury must be told that the plaintiff is a public official. In *Russell*, plaintiff was a police officer, and the court instructed the jury on the so-called "business privilege" or "common interest doctrine." The jury was instructed to consider whether the statements were made by a person with an interest or a duty in the subject matter to another person with an interest or duty in the subject matter, making the statements therefore conditionally privileged. Under this instruction, the jury was free to find that there was no "common interest," and therefore it could have concluded that no privilege existed and consequently would not have applied the proper test of whether the statement was made with "actual malice." Had the jury been told that plaintiff was a "public official," it

would have been bound to apply the proper test. Both the Florida Court of Appeals and subsequently the Florida Supreme Court rejected plaintiff's argument that refusal to instruct on the public official privilege was harmless error in that a finding of malice was implicit in the jury's award of punitive damages. The test for malice for purposes of granting punitive damages is not necessarily the same as the *New York Times'* test applicable to qualify a privilege. *See Smith v. Russell,* 456 So.2d 462 (Fla.1984). Unlike the situation in *Russell v. Smith,* the instant case does not involve the use of an improper test for malice.

Appellants also rely upon *Marchesi v. Franchino,* 283 Md. 131, 387 A.2d 1129 (1978) as authority that it is reversible error for the trial court to fail to instruct the jury on the existence of a qualified privilege because it deprives a jury of the opportunity to evaluate the occasion on which the statements were uttered and understand why it was necessary for them to consider the actual malice question. In *Marchesi,* however, the Maryland Court of Appeals held that the jury was instructed improperly on the test of "actual malice." The case does not hold that failure to explain the reason for applying the test is *per se* reversible error.

Finally, we note that appellants' reliance upon *Roscoe v. Schoolitz,* 105 Ariz. 310, 464 P.2d 333 (1970), is likewise misplaced. The holding in *Roscoe* was that the court erred by instructing the jury that defendants had the burden of establishing the existence of a qualified privilege by a preponderance of the evidence. The court held that the jury should have been instructed that plaintiff had the burden of proving a lack of good faith in order to defeat the defense of a qualified privilege. *Roscoe,* 105 Ariz. at 314, 464 P.2d at 337. It does not hold that failure to instruct on the reasons for the existence of a qualified privilege is *per se* reversible error. Indeed, the appellants here enjoyed a relative advantage over the defendants in many of the cases they rely on because here, the question of the existence of the privilege was established by instruction for the jury.

Appellants' requested instructions would have required the court to explain two bases for charging jurors with the duty of finding the existence of actual malice by clear and convincing evidence. The purpose of jury instructions is to inform the jury about the issues of the case and give them guidance in deciding those issues. *See Eldredge v. Miller,* 78 Ariz. 140, 144, 277 P.2d 239, 243 (1954). Instructions must be considered as a whole; the test is whether, upon the whole charge, the jury will gather the proper rules to be applied in arriving at a correct decision. *Kauffman v. Schroeder,* 116 Ariz. 104, 106, 568 P.2d 411, 413 (1977). The court is not required to instruct the jury on every refinement in the law. *Fridena v. Evans,* 127 Ariz. 516, 522, 622 P.2d 463, 469 (1980); *Hales v. Pittman,* 118 Ariz. 305, 310, 576 P.2d 493, 498 (1978). As appellee points out, there are instances where juries are instructed without being told the reason for that instruction. *See, e.g.,* Recommended Arizona Jury Instructions *Negligence 2A* (contributory negligence instruction in which the jury is not told that the reason for the instruction is that the instruction is required under the Arizona Constitution).

The jury was correctly instructed that it had to find actual malice by clear and convincing evidence. We find no prejudice resulting from the trial court's failure to give defendants' proposed instructions. Counsel for defendants was free to argue and did argue that it was the duty of his clients to come forward and report to their superiors. Thus, he was able to argue the underlying principles and the reasons for the instruction on malice.

Appellants also contend that the trial court erred by failing to give their requested instruction number 4 which provided:

I will instruct you on what the law defines actual malice to be. I now will instruct you, however, on what actual malice is not. Actual malice, as that term is used in these instructions, is not ill will, evil motive, spite, hostility or a deliberate intention to harm an individual.

Defendants contend that this instruction would properly have advised the jury that alleged hostility and ill will existing between Bateman and Starkins could not prove the actual malice which was required in this case. However, ill will does present circumstantial evidence of actual malice which may be considered by the jury. *See Indianapolis Newspapers, Inc. v. Fields,* 254 Ind. 219, 250, 259 N.E.2d 651, 664 (1970); *Cochran v. Indianapolis Newspapers, Inc.,* 175 Ind.App. 548, 559–60, 372 N.E.2d 1211, 1220 (1978). *See generally Restatement (Second) of Torts* § 580 A, comment d (1977). Appellants cite authorities which conclude that ill will, "standing alone" is not sufficient of itself to prove malice. *See Ross v. Duke,* 116 Ariz. 298, 301, 569 P.2d 240, 243 (App. 1976); *Goldwater v. Ginzberg,* 414 F.2d 324, 342 (2d Cir.1969). However, they do not hold that ill will is not evidence of actual malice.

The instructions given to the jury defining malice were proper. We find no reversible error in the court's refusal to give defendants' requested instruction number 4. The instruction was unnecessary and even misleading in the sense that it implies that hostility, ill will, and evil motive could not be taken into consideration on the issue of actual malice.

Finally, the appellants contend that the trial court erred by failing to give their requested instruction number 8 which defines the terms "clear and convincing." In support of this proposition appellants cite *Callahan v. Westinghouse Broadcasting Co.,* 372 Mass. 582, 363 N.E.2d 240 (1977), where the Supreme Judicial Court of Massachusetts approved a jury instruction defining "clear and convincing" evidence in a defamation suit. *Id.,* 372 Mass. at 587–88, 363 N.E.2d at 243–44.

In the instant case, the court instructed the jury that "clear and convincing evidence" requires a higher degree of certainty than the preponderance of the evidence. We have expressly held that there is no need to define the terms "clear and convincing." *See Ulan v. Richtars,* 8 Ariz.

App. 351, 356, 446 P.2d 255, 260 (1968). *See also Phoenix Newspapers, Inc. v. Church,* 24 Ariz.App. 287, 296–97, 537 P.2d 1345, 1354–55 (1975). Accordingly, we find no reversible error in the trial court's failure to give defendants' requested instruction number 8.

## MISCONDUCT OF COUNSEL

Defendants argue that plaintiff's counsel erred in closing argument by attempting to show Bateman's malice by examples of ill will and past disputes between Bateman and Starkins. As previously discussed, the existence of ill will was a factor which could be considered as circumstantial evidence as to the existence of actual malice.

Additionally, great latitude should be given to counsel in closing arguments. *See Pelayo v. Bell,* 13 Ariz.App. 418, 419, 477 P.2d 537, 538 (1971); *Tanner v. Pacioni,* 3 Ariz.App. 297, 301, 413 P.2d 863, 867 (1966). An appellate court will normally defer to the trial court's ruling on misconduct of counsel unless it is clear that the trial court has abused its discretion; absent an abuse of discretion resulting in a clear showing of prejudicial error, the ruling of the trial court will not be disturbed on appeal. *See Taylor v. DiRico,* 124 Ariz. 513, 518, 606 P.2d 3, 8 (1980); *Taylor v. Cate,* 117 Ariz. 367, 369, 573 P.2d 58, 60 (1977). We find no abuse of discretion in this case.

## DAMAGES

Appellants' final argument is that the jury awarded outrageously excessive damages. The amount of a damage award is a question peculiarly within the province of the jury, and it will not be overturned or tampered with unless the verdict was the result of passion and prejudice. *Larriva v. Widmer,* 101 Ariz. 1, 7, 415 P.2d 424, 430 (1966). The size of the

549

verdict alone is insufficient evidence of prejudice and passion on the part of a jury. *Meyer v. Ricklick*, 99 Ariz. 355, 357, 409 P.2d 280, 281 (1965). The test as to whether the jury's verdict is the result of passion and prejudice is whether the result reached in damages awarded is so unreasonable and outrageous as to shock the conscience of the court. *Riffle v. Robert L. Parker Co.*, 19 Ariz.App. 100, 107, 505 P.2d 268, 275 (1973); *State v. Watson*, 7 Ariz.App. 81, 87, 436 P.2d 175, 181 (1967). No such showing has been made in the instant case.

Further, we note that the initial responsibility for reducing an excessive verdict is with the trial court. *Magma Copper Co. v. Shuster*, 118 Ariz. 151, 154, 575 P.2d 350, 353 (App.1977); *Braun v. Moreno*, 11 Ariz. App. 509, 512, 466 P.2d 60, 63 (1970). The trial court granted a remittitur and reduced punitive damages against Bateman from $20,000 to $4,000 and against Alcott from $10,000 to $2,000. Where the trial judge has otherwise refused to interfere with the jury's verdict, this court will not interpose its own judgment unless convinced that the amount is so outrageously excessive to suggest, at first blush, passion or prejudice. *Braun*, 11 Ariz.App. at 512, 466 P.2d at 63.

There was evidence in the record that Starkins' reputation was severely harmed as a result of the defamation. There was evidence that he was unable to obtain comparable employment as a result of the defamation and that his emotional suffering was great. There was very convincing evidence that he loved his job in the fire department and that he was devastated by the inability to continue his life's work. Additionally, there was evidence that the defamation was a factor in the dissolution of his marriage. While we recognize that the award is a very large one indeed, we do not find it to be outrageously excessive.

The judgment of the trial court is affirmed.

CORCORAN and EUBANK, JJ., concur.